STATE OF MISSOURI, Respondent, *v.* BERNARD J. REILLY, Appellant.

### October 30, 1877.

1. It is not error for the trial court, in a criminal case, to refuse to delay the trial until the return of an attachment for an absent witness. If the defendant fails to file an affidavit and application for continuance, and takes the risk of the witness being found on attachment, he must abide the consequence of the witness not being found.

2. A departure from the prescribed formalities in making up the jury-list will not furnish ground for a new trial, or for a reversal, unless it be shown that there was fraud or collusion, or that the losing party suffered material injury.

3. It is unfair for the circuit attorney, in his closing argument to the jury, to accuse the prisoner of fraudulently smuggling jurors into the panel for the purpose of securing an acquittal, when such accusation is unwarranted by the record; and the court should promptly check the attorney, and by the administration of a proper rebuke divest the case of the unfair influences thus introduced.

4. The mere conversion of money to the agent's own use after collection, and failure to pay it over to his principal, does not constitute the crime of embezzlement. There must be a felonious intent, at the time of the conversion, to appropriate it to the agent's own use and to deprive the owner of it.

5. Where the agent, though mistaken, really believes he has a just claim against his principal, and in good faith undertakes, by holding his principal's money, to secure himself against loss, there can be no criminal intent. But where the claim is known by the agent to be wholly unfounded, its assertion will be no defence under the statute.

APPEAL from St. Louis Criminal Court.

*Reversed and remanded.*

J. G. LODGE and C. P. JOHNSON, for appellant: Where it appears that the defendant has been injured by a refusal to give time to procure a witness, this is ground for a reversal. — *The State* v. *Klinger*, 43 Mo. 130. A departure from prescribed formalities in making up a jury-list is a ground for a new trial. — *Holme* v. *The State*, 54 Mo. 153. Embezzlement; criminal intent. — 1 Bishop's Cr. Law, secs. 286–288; Kelly's Cr. Law, secs. 582, 601. The defence of a claim by the agent against his principal. — 2 Bishop's Cr. Law, sec. 376; *Regina* v. *Hodgson*, 3 Car. & P. 422; *Regina* v. *Norman*, Car. & M. 501; *Regina* v. *Creed*, 1 Car. & Kir. 63.

L. B. BEACH and R. G. FROST, for respondent: Continuance. — Wag. Stat. 1040, sec. 7; *The State* v. *Klinger*, 43 Mo. 127. Application for continuance must show diligence. — *Cline* v. *Brainard*, 28 Mo. 341; *Farmers & Drovers' Bank* v. *Williamson*, 61 Mo. 259; *The State* v. *Murphy*, 430. The objection to the jury on ground of irregularity is too late after verdict. —*The State* v. *Brien*, 59 Mo. 413; *The State* v. *Piltz*, 58 Mo. 556. It is enough if there be a fraudulent conversion, and that being shown, the intent is established. — *The People* v. *Dalton*, 15 Wend. 581. An appellate court will not review the discretion of a trial court in the control of the utterances of counsel during the trial and argument. — *The State* v. *Kring*, 64 Mo. 591; *Lloyd* v. *Hannibal, etc., R. Co.*, 53 Mo. 509.

LEWIS, P. J., delivered the opinion of the court.

The defendant appeals from his conviction under an indictment for embezzling $20,000, the property of Bridget M. Ivory. He alleges error committed by the Criminal Court in refusing to postpone the trial until he could procure the attendance of an absent witness. When the case was called for trial, James Clemens, a witness for defendant, did not answer. It appearing from the marshal's return that he had been personally served, the court ordered an attach-

ment returnable forthwith. Defendant thereupon asked that
the trial be delayed until the return of the attachment, and
offered to make affidavit to certain facts which, for the
present purpose it may be conceded, would have entitled
him to a continuance if presented in that form. The circuit
attorney, upon defendant's demand, declined to admit that
the witness, if present, would testify as alleged. The court
directed the trial to proceed. The attachment was returned
"not found," and the case went to the jury without Clem-
ens's testimony.

There was no error in this proceeding. A mere offer to
make affidavit, in applying for a continuance, is of no force
unless the adverse party respond with a consent that the
statement may be made upon oath, orally. In the absence
of such consent, the applicant can claim nothing without
the affidavit itself. It does not appear from the bill of
exceptions that the court refused to allow an affidavit to be
made, or in any manner intimated that one would be
ineffectual if presented. It may be said that the defendant
was not asking for a continuance, but only for a temporary
delay. He had before him, however, the alternatives of
demanding a continuance upon the affidavit, presented in
due form, and of risking the production of the witness upon
the attachment during the trial. He chose the latter, and
cannot now complain of the result.

While the jury were empanelling, it was discovered that
one of those on the list had not been placed there by the
jury commissioner, but was surreptitiously substituted for
one whose name had been erased. He was discharged, and
the panel was completed from those remaining. The circuit
attorney, in his closing argument to the jury, distinctly
charged that two jurors had been fraudulently smuggled
into the panel, by defendant's procurement, in order to
secure an acquittal. Defendant's motion for a new trial
was accompanied by an affidavit declaring the falsity of this
charge, and that its utterance had seriously prejudiced his

defence. The court's refusal of a new trial is now urged for error, on account both of the unlawful composition of the jury and of the circuit attorney's unfairness in connecting the defendant therewith.

It is settled in this State that a departure from prescribed formalities in making up the jury-list will not furnish ground for a new trial, or for a reversal, unless it be shown that there was fraud or collusion, or that the losing party suffered material injury. *The State* v. *Breen*, 59 Mo. 413. For aught that appears in this record, the substituted jurors were placed on the list without fraudulent design, and were as competent and as fair for the defendant as the persons whose places they filled.

Nothing in this record justifies the serious accusation against the defendant made by the circuit attorney in his closing address to the jury. That officer should never be supposed to desire the conviction of the prisoner on trial, without reference to the question of guilt or innocence. As the representative of a just and good government, he should, if any thing, be more solicitous to preserve the liberty and fair repute of the upright citizen than the punishment of the malefactor. When the charge of fraudulently tampering with the machinery of justice is openly made by such an officer, the jury hearing it may well conclude that it must be founded upon facts within his official knowledge. It may be assumed, in this case, that the officer believed himself justified as to the truth of the accusation. But it was none the less unfair for him to publish it when the defendant could neither deny nor explain, and when every suspicion against him might gather force from his arraignment on a charge of felony. A trial cannot be a fair one in which the accused is subjected to undue prejudices in the minds of his triers. Some allowance must be made for hasty utterances in the heat of advocacy, but no such indulgence should overstep the bounds of justice. In this case the court should have promptly checked the course of the cir-

cuit attorney, and, by a proper rebuke, if necessary, have endeavored to divest the case of the unfair influence thus introduced.

Embezzlement as a crime is of purely statutory creation. The earliest English statute was enacted in the reign of Henry VIII., and was induced by the doubts entertained whether the delinquencies which it embraced could be brought within the common-law definition of larceny. The law has undergone several modifications by later acts of Parliament. In the several States of our Union the statutory definitions of the offence differ in so many particulars that no adjudicated interpretation can be of general application. The Missouri statute provides that "if any agent, clerk, apprentice, servant, or collector of any private person" * * * "shall embezzle or convert to his own use, or shall take, make way with, or secrete, with intent to embezzle or convert to his own use, without the assent of his master or employer, any money, goods, rights in action, or valuable security or effects whatsoever, belonging to any other person, which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction, be punished in the manner prescribed by law for stealing property of the kind or value of the articles so embezzled, taken, or secreted." Wag. Stat. 458, sec. 35.

While the word "embezzle" may be said to contain within itself all the elements of a criminal conversion, the disjunctive expression, "or convert to his own use," taken literally, might be supposed to define the crime as consisting of any act of conversion, by one of the persons specified, of any property within the descriptive words, however innocent might be the intent. But such an interpretation would be repugnant to the fundamental principles which sustain even the right to legislate against crime. There can be no crime without a criminal intent. Even homicide, which is capable of implying the worst of crimes, may yet

be not merely innocent, but commendable, by reason of the intent which directs the act. The universality of the natural law which deems no one to merit punishment unless he intended evil is exemplified by the distinguished law-writer who says that "even infancy itself spontaneously pleads the want of evil intent, in justification of what has the appearance of wrong, with the utmost confidence that the plea, if its truth is credited, will be accepted as good." 1 Bishop's Cr. Law, sec. 290. The same writer says: "In statutory offences there must be an evil intent, though the statute is silent on the subject." *Ibid.*, sec. 345. An English statute (12 Geo. III. c. 48) made it felony to write any matter or thing liable to stamp-duty upon paper on which had previously been written some other matter so liable before the paper had been again stamped, but made no mention whether the intent need be fraudulent or other-wise. It was ruled by Abinger, C. B., that the offence is not committed unless the intent be fraudulent. *Regina* v. *Allday*, 8 Car. & P. 136.

The Criminal Court refused, upon defendant's application, to give the following instruction:

"The jury are instructed that the failure to pay over money by the agent after it is collected does not of itself constitute embezzlement, nor does the mere conversion of it to the agent's own use after collection and failure to pay it over constitute embezzlement, but there must be a felonious intent, at the time of the commission, to appropriate it to the agent's use and to deprive the owner of it; and the jury are instructed that unless they find and believe from the evidence that the defendant, at the time he converted the money of Mrs. Ivory to his use, did so with the felonious intent to deprive her absolutely of the use thereof, they will acquit him."

The following was given by the court, of its own motion:

"The jury are instructed that, in order to convict the defendant of the crime here charged, they must find from

the evidence that he received the money mentioned by
virtue of his agency; that he did feloniously — that is,
wrongfully — embezzle and convert said money to his own
use, and that he failed and refused to account for and pay
over said money, when demand therefor was made by Mrs.
Ivory. Whether the defendant was the agent of B. M. Ivory ;
whether, as such agent, he received the money mentioned
and described in the indictment; whether he feloniously
embezzled and converted said money to his own use, and
failed to account for and pay over the same on lawful
demand therefor, are all facts which the jury must deter-
mine for themselves from the evidence in the cause, and
from which they must say whether the defendant is guilty,
as charged, of having feloniously converted to his own use
the money of his principal, B. M. Ivory.''

The defendant's instruction ought to have been given.
It was his right to have the question of intent squarely
placed before the jury. Upon refusal to do this, in the
form requested by defendant, it was the duty of the court
to present it in some terms sufficiently explicit to avoid any
ambiguity or uncertainty. This was not done in the instruc-
tion given. The jury were told that, in order to a convic-
tion, the act must have been done " feloniously." But to
this qualifying term was appended a definition which
unfairly enlarged its signification. A wrongful act is not
necessarily felonious. It is wrong for a man to avoid the
payment of his debts, to hold a possession adversely to the
true owner, or to do any one of many other acts to which
no idea of crime ever attaches. A wilful homicide, if wrong-
ful, must, from the very nature of the act, be felonious in
the common-law sense. But when we are dealing with the
offence of embezzlement, wherein the constituents of crime
and those of a mere breach of civil obligation are so easily
confused and so difficult to separate, it is exceedingly
unsafe to tell a jury, in effect, that they may consider
every wrong-doing, in that connection, as the equivalent of

a felony.   These principles will be further considered in connection with another instruction given by the court, as follows :

"If the jury find and believe from the evidence that, at the time the prosecuting witness, B. M. Ivory, demanded her money of the defendant, he, in good faith, refused to pay it to her until she allowed a claim he believed he had against her, then they will consider such refusal and failure to pay as evidence tending to show the good faith and innocence of the defendant of the charge of embezzlement."

This instruction exhibits a fatal defect, in the insufficiency of its conclusions.   It is impossible to imagine an act of conversion which will be at the same time criminal and yet done in good faith.   If the defendant really believed, although mistakenly, that he had a claim against his principal, and in good faith undertook to secure himself against loss, the essential element of criminal intent was wanting, and so there could be no crime.   If the claim was wholly unfounded, and known by him to be so, its assertion might avail him nothing under our statutes.   But such are not conditions supposed by the instruction.   The claim may have been, in fact, unauthorized, and its enforcement a violation of the rights of the defendant's principal.   In that case, a wrong was done.   But if done in good faith, under a belief that the claim was well founded, it could not have been a criminal wrong, unless it is inadmissible for an agent, in any case, to retain the money of his principal, even when holding an unquestionable claim upon every dollar that may come to his hands.   For if it be right for an agent to do this last, it cannot be a crime for him to do that which he honestly believes to be nothing more.   It thus appears that a conversion by an agent, without the assent of his principal, may be wrongful, because in derogation of an existing civil right ; and yet not felonious or criminal, because of the absence of any intent to commit a

crime. This further illustrates the error in the preceding instructions, while it shows that, in the last one above, the court stopped short of the defendant's rights when it permitted the jury, in the case supposed, to do no more than "consider such refusal and failure to pay as evidence tending to show the good faith and innocence of the defendant." The proper sequence of the conditions stated would have been the defendant's right of acquittal.

From the evidence preserved in the bill of exceptions before us it may be inferred that the defendant did not conceal from Mrs. Ivory the fact of his collections for her, or their amounts; but that, offering one excuse or another, upon her repeated demands, up to the time of his bankruptcy, he failed or refused to pay over. There are numerous English decisions to the effect that, under such circumstances, there can be no conviction for embezzlement. It is even held that if the agent, in withholding his principal's money, sets up a claim against it which is utterly false and frivolous, there is no felony, but only a "default of payment." *Regina* v. *Creed*, 1 Car. & Kir. 63; *Regina* v. *Norman*, Car. & M. 501; *Regina* v. *Hodgson*, 3 Car. & P. 422. But all such rulings fail of application to the Missouri statute, which was obviously framed to be more comprehensive than the British legislation. It is by no means sufficiently comprehensive, however, to make a conversion punishable unless done with intent to commit a crime. We think that, in this cause, the action of the court in giving and refusing instructions may well have made it possible, at least, for the jury to reach a different understanding of the law.

The judgment is reversed and the cause remanded. Judge HAYDEN concurs; Judge BAKEWELL not sitting.