BLANCO, PETICIONARIO-APELANTE *v.* EL PUEBLO, OPOSITOR-APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Segunda, en procedimiento de *Habeas Corpus.*

No. 1193.—Resuelto en julio 26, 1917.

ABUSO DE CONFIANZA—CONVERSIÓN DE LA PROPIEDAD—JURISDICCIÓN.—Como elemento necesario del delito de abuso de confianza, la conversión es la apropiación fraudulenta de la propiedad de otra persona para propio uso, y la jurisdicción del delito, a falta de ley positiva, es la del Estado en que se convirtió la propiedad aunque la misma haya sido recibida en otro Estado.

ID.—INTENCIÓN CRIMINAL—PRUEBAS.—La intención de cometer el delito de abuso de confianza puede manifestarse por la realización de cualquier forma de engaño, o fugándose con el dinero, o gastándolo para propio uso en violación de instrucciones recibidas, o alterando de cualquier otro modo el curso del dinero con la idea de apropiárselo, y dicha intención puede probarse tanto por medio de prueba circunstancial como de prueba directa.

ID.—CAUSA PROBABLE—HABEAS CORPUS.—Apareciendo de la prueba documental

aducida por el Fiscal que existe causa probable para imputar el delito de abuso de confianza, la solicitud para que se expida un auto de *habeas corpus* fué debidamente denegada.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Eugenio Benítez Castaño.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Esta es una apelación interpuesta contra una sentencia dictada por la Corte de Distrito de San Juan denegando una solicitud de un auto de *habeas corpus* en la que se alega la falta de jurisdicción y falta de causa probable suficiente para sostener la acusación por abuso de confianza.

En la vista celebrada en la corte inferior el fiscal produjo la denuncia jurada de Josefina Dagnino, la parte pertinente de la cual reza como sigue:

"Que conoció en Venezuela a Humberto Blanco Fombona, con quien había tenido relaciones amorosas y a quien volvió a ver aquí, en Puerto Rico, hace algunos meses. Con este motivo renovaron nuevamente sus amores y, como consecuencia, depositó en él su confianza. Que él le hizo entender que en Santo Domingo había una gran oportunidad de hacer dinero, comprando, por poco dinero, una gran cantidad de terreno. Que en virtud de eso, y creyendo de buena fe en el negocio, tomó de la señora Filomena García la suma de $1,300 a interés, firmándole un documento ante el notario Don Damián Monserrat, lo que ocurría en los últimos días del mes de diciembre. Que en los primeros días del mes de enero, estando él ya en Santo Domingo, salieron en dirección a aquella Isla, con el objeto de llevar a cabo el negocio de la compra de unos terrenos por la suma de $1,000; que llegó la denunciante, junta con su amiga Filomena García a Santo Domingo y que allí pasaron más de veinte días sin que se realizara el negocio, por defecto, según alega el acusado, en la titulación, y sin que les mostrara las tierras, bajo la disculpa de que, tratándose de señoras y estando esos terrenos lejos, se hacía muy difícil y molesto visitarlos. Que accediendo a las peticiones del acusado le entregó la suma de $1,000 que tenía depositados en la Sucursal del Royal Bank of Canada, en Santo Domingo; que no habiéndose podido hacer el negocio por la cuestión de los papeles, regresó la declarante con su amiga a Puerto Rico, quedando él

en Santo Domingo. Que a los diez o doce días vino él, o sea, allá en los primeros días de febrero; que la contentó diciéndole que su hermano había quedado encargado de la gestión del negocio de los terrenos en Santo Domingo; que había traído el dinero en un cheque para no perderlo, pero no se lo devolvió, haciéndole creer siempre en la realización del negocio. Que el día 21 de marzo de 1917, después de haber pasado la velada anterior con la declarante, supo que había embarcado; fué a verlo al vapor, lo halló y allí él le dijo que no pasara ningún cuidado; que le había escrito y que en la carta que le había escrito encontraría la explicación de todo y, efectivamente, se encontró con una carta en la cual le decía que se quedaba con el dinero por miedo de que ella lo siga y los gaste, ofreciéndole pagarle intereses.''

Esto está corroborado en parte por la declaración de Filomena García y por la carta que Josefina menciona, cuyo tenor literal es como sigue:

''San Juan, 21 de Marzo de 1917.

''Josefina amiga:

''Cuando lleguen a tus manos estas líneas, ya yo estaré rumbo al Norte. Mi viaje no te sorprenderá por lo tanto que te lo he decantado.

''Tu cariñosa conducta para conmigo, durante mi enfermedad, ha empeñado mi gratitud para con la amiga. Los lazos de amistad, de una amistad franca y sin interés, como debe ser la nuestra, se han estrechado durante esos días en que mi salud se encontraba bastante quebrantada y estaba yo lejos del centro de mis afectos.

''Alejado yo de Santo Domingo no te recomiendo el negocio de los terrenos porque hay el sinnúmero de peligros, debido a los títulos, que si no son muchos, dejan mucho que desear. Durante dos meses he trabajado con el objeto de que esos títulos se arreglasen conforme a las leyes; pero no lo he logrado y en esas circunstancias no puedo permitir que tu te embarques en esa negociación que traería sin duda dolores de cabeza posteriormente. Te devuelvo, pues, en un cheque tu dinero íntegro. Los gastos ocasionados de notario, etc., los perderé yo con el mayor gusto, quedándome la satisfacción de haberte impedido realizar un mal negocio.

''De New York te escribiré y te diré como me tratan los *yankees.*

''Saludos para Filomena y tú recibe las protestas de amistad de quien te agradece nuevamente todas tus demostraciones de cariño y aprecio.

''Humberto.

"P. S.   En el momento de botar ésta al correo pienso en tu espí-
ritu aventurero y en que puede producirte un sentimiento de envidia
mi viaje y ocurrírsete imitarme, lo que no dejaría de ser simplemente
una locura; por lo tanto me parece más cuerdo no enviarte el cheque
y guardar yo el dinero, pagándote, desde luego, los intereses de esa
suma.   Puede que este procedimiento sea tiránico, pero procedo en
nombre de la cordura, y de esos mismos sentimientos de amistad, ca-
riño y aprecio que te profeso.

"H."

Existe otra carta, la que no necesitamos discutir, y otros
testimonios tendentes a demostrar el propósito que tenía el
acusado de salir de San Juan para Nueva York y de allí para
Londres.

Creemos que lo que antecede es suficiente para demostrar
que si es que el delito se ha cometido, se cometió en Puerto
Rico; y creemos que la prueba presentada por el fiscal es
suficiente a justificar la presentación de la acusación.

"La jurisdicción del delito de abuso de confianza, a falta de ley
positiva, es la del Estado en que se convirtió por el acusado en su
propio uso y beneficio el dinero o propiedad, aunque se haya recibido
en otro Estado," 12 Cyc. 210.

"La conversión, como elemento necesario en el delito de abuso de
confianza, es la apropiación fraudulenta de la propiedad de otra
persona en su propio uso.   *   *   *.

"Apropiarse en su propio uso no quiere decir necesariamente en
su propio beneficio personal.   Toda tentativa de una persona de dis-
poner de bienes de otra sin derecho como si fuesen suyos es una con-
versión en su propio uso   *   *   *.   El Estado no necesita demos-
trar qué se ha hecho el dinero después del desfalco.

*        *        *        *        *        *        *

"A falta de requisitos estatutorios al efecto el dueño de la pro-
piedad no necesita como regla general exigir su devolución   *   *   *.

"En los casos de abuso de confianza, como en otros delitos, la in-
tención criminal es necesaria.   El acusado ha tenido que actuar con
malvada (felonious) intención y realizar una intencional perversa
disposición de la propiedad indiciaria del preconcebido propósito de
estafar (cheat) y engañar a su dueño.

\*          \*          \*          \*          \*          \*          \*

"La intención de desfalcar (*embezzle*) a una persona puede manifestarse por varios actos, tales como hacer aparecer falsos asientos (en los libros de comercio), negando recibos de dinero, dejando de apuntar una cuenta cuando se deba hacer, presentando cuentas falsas, o poniendo en práctica cualesquiera formas de engaño, o fugándose con el dinero, o gastando en realidad el dinero para usos propios del acusado en violación de las instrucciones recibidas, o de otro modo distrayendo el curso del dinero con el fin de hacerlo suyo. Además, la intención puede resultar tanto de la prueba circunstancial como de la prueba directa." 9 R. C. L. p. 1275 *et seq.*, párs. 16, 18, 19, 20.

El argumento del apelante se apoya principalmente en la supuesta deficiencia de la prueba respecto a la intención criminal; pero las manifestaciones orales del acusado respecto al estado del proyectado negocio en Santo Domingo comparadas con la declaración subsiguiente de la situación que pinta en su carta, la ocultación de su proyectado viaje, sus evasivas en el momento de su partida, sus confidencias a personas distintas de la denunciante a continuar probablemente su viaje desde Nueva York a Londres, sugestivas cuando menos de una ausencia algo prolongada, de hecho todas las circunstancias que rodeaban su partida, aunque no del todo incompatibles quizá con un honesto propósito susceptible de explicación, sin embargo, mientras no sean explicadas, indican suficientemente la malvada intención (*mens rea*).

"La intención se manifiesta por las circunstancias relacionadas con el delito, y el sano juicio y discreción del acusado. Se reputan de sano juicio todos los que no sean idiotas, lunáticos o locos.

"Una intención maliciosa y criminal se presume por la manera y deliberación con que se intente o cometa un acto ilegal con el propósito de perjudicar a otro." Art. 12 del Código Penal, sec. 5418 de la Compilación.

El acusado no ha sido aún juzgado y por supuesto no expresamos opinión alguna respecto a los hechos, sosteniendo, sólo como lo hacemos que de la prueba documental aducida por el fiscal aparece suficientemente la causa probable que

existe para enjuiciar al acusado, cuya existencia se había negado por el peticionario.

La sentencia es de confirmarse.

*Confirmada la resolución apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.