THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GEORGE L. HOLLIDAY, Defendant and Appellant. SAME *v.* SAME.

Nos. 6967 and 6968. Argued June 8, 1938.—Decided June 24, 1938.

*Gabriel de la Haba* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Two complaints were filed against George L. Holliday, charging him with the crime of embezzlement, committed in

"wilfully, maliciously, and fraudulently" appropriating the amounts of two checks in favor of "Prensa Insular de Puerto Rico," one of them for $99.00 and the other for $74.67.

On August 14, 1936, the cases were taken on appeal, to be tried *de novo* before the District Court of San Juan. On January 5, 1937, the defendant moved to dismiss the prosecutions on the ground that more than 120 days had elapsed without his having been tried. In the following month of February the court denied his motion and set the cases for trial on March 3, 1937.

On that date the cases were tried jointly on the same evidence and judgments were rendered on April 6, 1937. The defendant was thereby convicted of two offenses of petit embezzlement and sentenced in each case to pay a fine of $100 and in default of such payment to be confined in jail one day for each dollar left unpaid.

Holliday appealed to this court, and in a brief covering both cases he has assigned seven errors as committed by the district court: in refusing to dismiss the prosecutions; in overruling the demurrer to the complaints for lack of facts sufficient to constitute an offense and in denying his motion for a peremptory discharge for lack of evidence; in finding him guilty to the offense charged, and that he had acted outside the scope of his employment; in not holding that the People had failed to establish his intent to defraud; and in disregarding uncontradicted evidence when weighing the evidence; and in acting under the influence of passion, prejudice, and bias.

In his brief, the prosecuting attorney (*Fiscal*) of this court opposes the first three assignments of error, but in his joint answer to the last four he concurs in the reversal of the judgments "because the fraudulent intent of the defendant to defraud anybody has not been shown beyond a reasonable doubt."

We have carefully considered the transcript and in our opinion the appeals taken should be sustained. We will rest

our decision exclusively on the lack of evidence as to any criminal intent imputed against the defendant, but we deem it proper to state also that we are inclined to think that the trial court also erred in overruling the motions to dismiss.

It appeared from the evidence that the defendant, from 1934 to February 1936, worked on a salary as head of the English section of *"El Imparcial,"* a daily newspaper published in the city of San Juan, and his salary not being sufficient to make a living, he took up also the soliciting of advertisements for the newspaper, for which he was paid a certain commission.

It further appeared from the evidence that as the concern owed some back salaries to Holliday, the latter was authorized by it to collect them from the proceeds of the advertisements, which he did without objection until the end of 1935, and he usually rendered his accounts by means of a statement of the amounts collected from advertisers and the amounts retained by him to cover his salary, the account with the balance being handed to the auditor of the concern. In this way he cashed several checks, which he submitted in evidence, dated August, September, and October 1935, and which he indorsed thus: "El Imparcial, By George L. Holliday." Such checks were presented by him for which he was paid a certain commission.

The evidence was conflicting as to whether or not this understanding subsisted in January 1936, at the time Holliday cashed the checks on which the complaints are based. According to the testimony of Antonio Ayuso, editor of the newspaper he had personally told Holliday, prior to the cashing of the checks, that he was discharged, which information was also given him by the auditor of the concern, García. The exact words of the latter, according to his testimony, were as follows:

"District Attorney: Q. Was Mr. Holliday allowed to take money from the liquidations after October 25, 1935?

"A. Well, he was told not to; I myself told him not to take money from the liquidations and to hand over all that he collected. I can not tell either whether it was about that time or subsequently that he was forbidden to make any collection, but to bring the whole of it to "El Imparcial" and not to take for himself any amount from the commissions; that "El Imparcial" would pay him his commission upon his delivery of the money.

"Q. Was that before or after appropriating the checks of Martínez & Márquez of the Fox Film?

"A. He was told before."

The defendant admitted the fact of the communication, but he stated that it was not in the nature of an order but as a request pending the liquidation of his account, and it is a fact that at the time of the collection and after the checks, on which the complaint was based, had been cashed, the concern owed him a certain sum of money.

The district court in the opinion which served as a basis for its judgment, cites section 452 of the Penal Code which provides as follows:

"Upon any information for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him."

It lays emphasis on the last part of the provision and cites the doctrine laid down by this court in *People* v. *Ortiz,* 7 P.R.R. 141, 143, thus:

"The fact that a servant, who was convicted of larceny by appropriating to himself property belonging to his master, may or may not have been paid his wages during his employment, can in no way disprove the charge or attenuate the responsibility of the guilty party. Therefore, it is not error to refuse to admit evidence on such point."

In the cited case the defendant was charged with embezzlement in that he had disposed unlawfully and fraudulently of two bullocks belonging to the "Obdulia" plantation of

which he was overseer, selling them and appropriating the proceeds to his own use. In the course of the opinion of the court, delivered by Mr. Justice Figueras, it was said:

" . . . . The question put by counsel to the injured party, as to whether he had paid the defendant his wages during the time he had been in his employ, was clearly impertinent, and it was so declared by the court. That question could have resulted in nothing really practical, because, whether the wages had been paid or not, this fact did not change the nature of the one contained in the information, nor was it, by itself, sufficient to lessen the responsibility of the guilty party."

A comparison of the two cases suffices to bring out the difference existing between them. In *People* v. *Ortiz, supra,* an isolated occurrence was involved. No showing was made of similar transactions having repeatedly taken place with the consent of the injured party. In the case at bar the defendant persisted in an accepted line of conduct. He went perhaps farther than he should have gone in acting, as he did after the notice from Ayuso and García. But it can not be inferred from his conduct that there existed the criminal intent required for the actual commission of the offense charged.

His connection with the concern still subsisted. The liquidation of his account, with a balance in his favor, was pending. After all, he took nothing that was not due him. He did not proceed slyly but openly. Everything shows that he trusted that what he did, although it might not be liked by the concern, would never be considered by it as a criminal offense.

"The general rule laid down by the authorities is that one who openly and avowedly takes the property of another without the latter's consent, in settlement of or as security for a debt bona fide claimed to be due him by the owner of the property, is, no matter what the offense may be, at least not guilty of larceny or embezzlement. The basis of the decisions is the lack of intent to defraud, which is the essence of the crime. . . . *Johnson* v. *State,* 73 Ala. 523; *People* v. *Eastman,* 77 Cal. 171, 19 Pac. 266; *Staples* v. *Johnson,*

25 App. D. C. 155; *Buchanan* v. *State*, 5 So. 617; *State* v. *Reilly*, 4 Mo. App. 392; *People* v. *Hopkins*, 126 App. Div. 843, 111, N. Y. Supp. 423; *Lawrence* v. *State*, 11 Tex. App. 306; *Young* v. *State*, 34 Tex. App. 290, 30 S. W. 238; *Reg.* v. *Wade* (England), 11 Cox. C. C. 549.'' 13 A.L.R. 142.

In *State* v. *Reilly*, 4 Mo. App. 392, 13 A.L.R. 145, it was held:

''An agent who really believes, although mistakenly, that he has a claim against his principal, and in good faith undertakes to secure himself against loss by withholding from the principal money due him, is not guilty of embezzlement, since ˉthe essential element of criminal intent is wanting.''

And in *State* v. *Collins*, 41 A. 144, 13 A.L.R. 146, it was held:

''. . . . In a prosecution against an agent of an insurance company under an indictment for embezzlement, in response to a request by defendant for an instruction that if the company owed him money he had a right to retain the money of the company that came into his hands as an officer, the court said: 'That is the law, and if he thought he had a just claim and retained the money under a claim of right, it is not embezzlement, although he may have been mistaken as to his right, since the fraudulent intent was not there.''

In virtue of all the foregoing, the judgments appealed from must be reversed and the defendant discharged in both cases.

Mr. Justice Travieso and Mr. Justice De Jesús took no part in the decision of this case.