356

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GEORGE L. HOLLIDAY, acusado y apelante. EL MISMO v. EL MISMO.

Núms. 6967 y 6968.—*Sometidos:* Junio 8, 1938. *Resueltos:* Junio 24, 1938.

*Gabriel de la Haba,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Contra George L. Holliday se presentaron dos denuncias imputándole la comisión de dos delitos de abuso de confianza consistentes en la apropiación "voluntaria, maliciosa y fraudulenta" del importe de dos cheques propiedad de "Prensa Insular de Puerto Rico," uno por noventa y nueve dólares y otro por setenta y cuatro dólares y sesenta y siete centavos.

Las causas se radicaron en apelación en la Corte de Distrito de San Juan en agosto 14, 1936. En enero 5, 1937, pidió su sobreseimiento el acusado por haber transcurrido más de ciento veinte días sin que se le sometiera a juicio. En febrero siguiente la corte declaró sin lugar la petición y señaló las vistas para marzo 3, 1937.

En esa fecha se celebraron, acumulándose las causas a los fines de la práctica de la evidencia, dictándose las sentencias en abril 6, 1937. Por ellas se declaró al acusado cul-

pable de dos delitos de abuso de confianza de menor cuantía, condenándosele en cada una a pagar cien dólares de multa y en defecto de pago a sufrir un día de cárcel por cada dólar que dejare de satisfacer.

Apeló Holliday para ante esta Corte Suprema, y en un alegato común a ambos recursos señala siete errores cometidos a su juicio por la corte de distrito al negarse a sobreseer las causas, al declarar sin lugar sus excepciones a las denuncias de falta de hechos constitutivos de delito y su moción de absolución perentoria por falta de prueba, al resolver que había cometido los delitos y que había actuado fuera de la esfera de su empleo, al no decidir que El Pueblo había dejado de establecer su intención de defraudar y al apreciar la prueba haciendo caso omiso de evidencia no impugnada y actuando con pasión, prejuicio y parcialidad.

El fiscal de esta corte en su alegato impugna los tres primeros señalamientos de error, pero al contestar conjuntamente los cuatro últimos muestra su conformidad con la revocación de las sentencias "porque no se ha probado, fuera de toda duda razonable, la intención fraudulenta del acusado de defraudar a nadie."

Hemos estudiado cuidadosamente la transcripción y a nuestro juicio los recursos interpuestos deben ser declarados con lugar. Fundaremos nuestra resolución exclusivamente en la falta de prueba de la intención criminal imputada al acusado, pero creemos conveniente manifestar además que estamos inclinados a creer que también la corte sentenciadora erró al declarar sin lugar las mociones de sobreseimiento.

Demostró la evidencia que el acusado trabajó a sueldo como director de la sección inglesa de *"El Imparcial,"* diario que se edita en esta ciudad de San Juan de Puerto Rico, desde 1934 hasta febrero de 1936, y que como su sueldo no fuera suficiente para satisfacer sus necesidades, se ocupó luego también de solicitar anuncios para el periódico, recibiendo por ello determinada comisión.

Demostró además que como la empresa adeudara a Holliday algunos sueldos, lo autorizó a cobrarlos del importe de los anuncios, haciéndolo sin dificultad hasta fines de 1935, siendo su práctica la de rendir sus cuentas mediante una relación en la que constaba lo cobrado por anuncios y lo tomado por él para pagarse su sueldo, entregando la cuenta con el saldo al auditor de la empresa. Así cobró varios cheques que presentó en evidencia fechados en agosto, septiembre y octubre de 1935, firmándolos como sigue: *"El Imparcial,* By: George L. Holliday," cheques que presentó con sus cuentas siendo éstas aceptadas.

La evidencia discrepa en si ese entendido subsistía o no en enero de 1936 cuando Holliday cobró los cheques en que se basan las denuncias. Según declaró el testigo de cargo Antonio Ayuso, director del periódico, él personalmente, con anterioridad al cobro, comunicó su cese a Holliday, comunicación que también le fué hecha por el auditor de la empresa, García. Las exactas palabras de éste fueron finalmente las que siguen:

"Fiscal: P.—¿Después de esa fecha de octubre 25, 1935, se le permitió al señor Holliday tomar dinero de las liquidaciones?

"R.—Bueno, se le advirtió que no; por mí mismo, que no tomara dinero de las liquidaciones y entregara cuanto traía. Yo también no sé si para esa fecha o después fué que se le prohibió que hiciera cobro alguno, sino que lo trajera íntegro a El Imparcial y que no tomara nada para él de las comisiones, y una vez entregado a El Imparcial, El Imparcial le pagaría su comisión.

"P.—¿Eso fué antes o después de coger los cheques de Martínez & Márquez de la Fox Film?

"R.—Se le advirtió antes."

El acusado reconoció el hecho de la comunicación pero declaró que no le fué trasmitida como una orden, sino como una súplica hasta tanto que su cuenta fuera liquidada, siendo lo cierto que cuando él cobró y después del cobro de los cheques en que se basan las denuncias, la empresa le debía cierta suma de dinero.

En la opinión que sirve de base a su sentencia la corte de distrito invoca el artículo 452 del Código Penal, que prescribe:

*"Defensa en Caso de Acusación.*—En los casos de acusación o denuncia por abuso de confianza, bastará como defensa justificar que la cosa fué apropiada abiertamente, en virtud de título aducido de buena fe, aunque resultare éste insostenible. Pero esta disposición no excusará la retención ilegal de bienes de otra persona para balancear o satisfacer algún crédito en contra de la misma."

Hace énfasis en su última parte y cita la jurisprudencia de esta corte establecida en el caso de *El Pueblo* v. *Ortiz*, 7 D.P.R. 140, tomándola del resumen, como sigue:

"La circunstancia de que un empleado, que hubiere cometido el delito de abuso de confianza disponiendo de bienes pertenecientes a su principal, hubiere percibido o no sus salarios correspondientes durante el tiempo por que fué empleado, en nada puede desnaturalizar la acusación, ni atenuar la responsabilidad del culpable, por lo que no constituye error la denegación de prueba sobre tal particular."

En ese caso se imputó al acusado la comisión de un delito de abuso de confianza consistente en haber dispuesto ilegal y fraudulentamente de dos novillos pertenecientes a la hacienda "Obdulia" de la cual era mayordomo, vendiéndolos y apropiándose su importe. Y en el curso de la opinión de la corte emitida por su Juez Asociado Sr. Figueras, se dijo:

". . . Impertinente de todo punto fué la pregunta hecha por el defensor al perjudicado, de si había satisfecho al acusado los salarios durante el tiempo que fué su empleado, y como tal la declaró el tribunal. Esa pregunta no tenía en su resultado verdadera finalidad práctica, porque satisfechos o no los salarios, ese hecho no desnaturalizaba el de la acusación, ni era por sí solo bastante para atenuar la responsabilidad del culpable."

Basta comparar uno y otro caso para advertir la diferencia que entre ellos existe. En el caso de *El Pueblo* v. *Ortiz*, supra, se trataba de un hecho aislado. Nada demostró que transacciones iguales se hubieran venido realizando con el

consentimiento del perjudicado. Aquí el acusado continuó una línea de conducta aceptada. Quizá fué más lejos de lo que debiera al actuar como lo hizo después del aviso de Ayuso y García. Pero no puede de sus actos deducirse que existiera la intención criminal que se necesita para que el delito se entienda realmente cometido.

Vivas estaban aún sus relaciones con la empresa. Pendiente la liquidación de su cuenta que arrojaba un saldo a su favor. Nada en última instancia tomó que no le correspondiera. No actuó ocultamente, sino a las claras. Todo revela que confió en que lo que hacía si bien podría contrariar o no ser del agrado de la empresa, jamás sería considerado por ésta como la comisión de un crimen.

"La regla general expuesta por las autoridades"—se dice en 13 A.L.R. 142—"es al efecto de que uno que se apropia abiertamente (*openly and avowedly*) de los bienes de otra persona, sin el consentimiento de ésta, para cancelar una deuda que aquél reclama de buena fe le adeuda el dueño de dichos bienes, no es, sin importar qué ofensa pueda ser, por lo menos culpable de hurto o de abuso de confianza. La base para la decisión es la falta de intención de defraudar, que es la esencia del crimen. . . . *Johnson* v. *State,* 73 Ala. 523; *People* v. *Eastman,* 77 Cal. 171, 19 Pac. 266; *Staples* v. *Johnson,* 25 App. D. C. 155; *Buchanan* v. *State,* 5 So. 617; *State* v. *Reilly,* 4 Mo. App. 392; *People* v. *Hopkins,* 126 App. Div. 843, 111 N.Y. Supp. 423; *Lawrence* v. *State,* 11 Tex. App. 306; *Young* v. *State,* 34 Tex. Crim. Rep. 290, 30 S.W. 238; *Reg.* v. *Wade* (England), 11 Cox, C. C. 549."

En *State* v. *Reilly,* 4 Mo. App. 392, 13 A.L.R. 145, se resolvió que:

"Un agente que sinceramente cree, aunque erróneamente, que tiene una reclamación contra el principal, y de buena fe trata de asegurarse contra pérdida reteniendo dinero del principal que se le adeuda, no es culpable de abuso de confianza, ya que el elemento principal, la intención criminal, no existe."

Y en *State* v. *Collins*, 41 A. 144, 13 A.L.R. 146, que:

"En un proceso contra un agente de una compañía de seguros por abuso de confianza, dijo la corte contestando una petición del acusado que se instruyera al jurado al efecto de que si la compañía le debía dinero él tenía derecho a retener el dinero de la compañía que llegaba a sus manos en su carácter de oficial de la corporación: 'Ésa es la ley, y si él creyó que tenía una reclamación justa y retuvo el dinero bajo una reclamación en derecho (claim of right), no es abuso de confianza aunque pueda haber estado equivocado en lo que respecta a sus derechos, ya que el interés de defraudar no estaba presente.' "

*Por virtud de todo lo expuesto, deben declararse con lugar los recursos, revocándose las sentencias apeladas y absolviéndose en ambos procesos al acusado.*

Los Jueces Asociados Señores Travieso y De Jesús no intervinieron.