EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN BONILLA LUGO, acusado y apelante.

*Número:* CR-64-7          *Resuelto:* 25 de noviembre de 1964

450

*Héctor Lugo Bougal,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La causa criminal contra el apelante Juan Bonilla Lugo por el delito de abuso de confianza (*felony*) se inició mediante acusación del fiscal en la cual se le imputó que en 27 de noviembre de 1961, "mientras actuaba como agente, representante o empleado de la C & D Engineering, Inc., se apropió fraudulentamente de la suma de trescientos dólares ($300.00), dinero que había sido entregado como antisipo (*sic*) para la construcción de una casa, apropiándose el referido Juan Bonilla Lugo de dicha cantidad de dinero, confiada a él para su entrega a la referida C & D Engineering, Inc., *y empleando dicha suma de dinero en su propio beneficio, privando de esta manera a su legítimo dueño de dicha suma de dinero.*"

En el acto del juicio—celebrado por tribunal de derecho—la prueba de cargo consistió en el testimonio de dos testigos,

Gerardo Maldonado Rivera y Abraham Marsach Rosado. Se admitió además que el testigo Michael Chacker, presidente de la corporación perjudicada, declararía en los términos de la declaración jurada que prestó durante la investigación preliminar. El apelante declaró en su propia defensa. Se le encontró culpable. Fue sentenciado a cumplir una pena indeterminada de 4 a 10 años de presidio, sentencia que fue suspendida bajo ciertas condiciones.

El único error que se señala es que "la evidencia admitida plantea una duda razonable y fundada que debió ser interpretada en favor del acusado." Enfatiza el apelante en su alegato que no se pretende la absolución por el hecho de que su declaración resulta contradictoria con la prueba de cargo, o que ha debido merecerle absoluto crédito al tribunal de instancia, sino más bien que, apreciada toda en conjunto, hace surgir una duda razonable y fundada sobre la culpabilidad del acusado. Por su parte, el Procurador General aduce que se trata de un asunto en el cual debemos aplicar nuestra reiterada norma de no intervenir con la apreciación de la prueba hecha por el juzgador, en ausencia de demostración de pasión, prejuicio o parcialidad. Señalaremos que en verdad no se requiere la aplicación de tal norma en forma rigurosa porque no se trata únicamente de la apreciación del *testimonio oral* de testigos. Concurre aquí la particularidad de que la *única declaración adversa* al apelante fue la del oficial de la corporación perjudicada, quien no compareció a la vista, pero cuya versión fue recibida a través de su atestación escrita. Veamos.

El testigo Maldonado se limitó a establecer que entregó al apelante la suma de $300 como pronto pago de una casa que le sería construida por la corporación C & D Engineering, Inc. Marsach Rosado, listero y oficinista de la corporación, sustancialmente declaró que Bonilla era el maestro de obras de dicha entidad, y que en tal capacidad estaba llamado a informar a la oficina de San Juan los gastos en

que incurría en los proyectos de Ponce; que el acusado estaba autorizado a recibir dinero de la compañía y *"podía usar cualquier dinero para gastos del proyecto*, como materiales de construcción que se necesitaran"; que se levantaba un fondo de caja menuda (*petty cash*); que en ocasiones Bonilla tenía que viajar a San Juan a buscar este fondo; que en 27 de noviembre Bonilla hizo un pago de ese fondo al señor de Jesús por servicios prestados a la corporación, y que además recogió varios cheques sin suficientes fondos que había expedido Chacker; que hizo otro pago por el importe de dos semanas de salario del chofer de la corporación. Específicamente, a la pregunta de si "este señor, como agente o representante de la corporación, hacía pagos de eso", respondió en la afirmativa y ratificó que "él estaba autorizado." Como se observará estos testimonios establecen concluyentemente dos de los tres elementos del delito imputado, a saber, (1) una propiedad determinada; y, (2) la existencia de una relación fiduciaria. *Pueblo* v. *Calderón*, 18 D.P.R. 584 (1912).

Para establecer el tercer elemento de la ofensa, o sea la apropiación o conversión fraudulenta, es necesario descansar en la declaración escrita de Chacker. Transcribimos a continuación la parte pertinente:

"P. Juan Bonilla Lugo, trabaja con usted?

R. Si señor, trabajaba, como maestro de obras y Representante de la compañía aquí en Ponce.

P. Estaba autorizado a recibir pagos por obras de la compañía?

R. Si señor, él estaba a cargo de la oficina de Ponce.

P. Estaba autorizado a recibir pagos por contratos de obras que iba a realizar la compañía?

R. Si señor.

P. Usted sabe de propio conocimiento si había algún contrato con el Sr. Gerardo Maldonado Rivera?

R. Si señor, él hizo un contrato.

P. Y dicho señor Gerardo Maldonado Rivera, había quedado en pagar a plazos?

R. Si señor y él pagó $300.00 al Sr. Juan Bonilla Lugo por unos planos que nosotros hicimos.

P. Ese dinero fue entregado a la Compañía?

R. No señor, nunca.

P. Y cómo se enteró usted de que Gerardo Maldonado Rivera había hecho ese pago?

R. Porque ese señor se quejó de que no había recibido el trabajo. Le dijo al Listero que le había pagado una cantidad de dinero a Juan Bonilla Lugo y el listero me preguntó a mi y yo le pregunté a Bonilla y Bonilla me dijo que él había recibido el dinero ese, los $300.00 y que lo tenía en el banco y dijo que él iba a mandar a la novia a buscar el dinero al banco para entregármelo, pero nunca me lo ha entregado.

P. Nunca se lo ha entregado?

R. No señor.

P. Hasta la fecha usted no ha recibido los $300.00 que recibió el Sr. Juan Bonilla Lugo de manos de Gerardo Maldonado Rivera?

R. No señor, no lo he recibido. Yo no sé si hice lo correcto, pero le devolví los $300.00 al Sr. Gerardo Maldonado Rivera del dinero de la Compañía, para mantener nuestro nombre limpio y puse un anuncio en la prensa para que cualquier persona que hubiera hecho un negocio con el Sr. Juan Bonilla Lugo me lo notificara inmediatamente.

P. Usted había autorizado al Sr. Bonilla a quedarse con ese dinero?

R. No señor.

P. *El deber de él era ingresarlo a la compañía?*

R. *Si señor.*" (Subrayado nuestro.)

El apelante, declarando como único testigo de defensa, dijo que tenía autorización para girar contra el fondo de caja menuda (*petty cash*) "para todo lo que creyera justo en beneficio de la corporación"; que los trescientos dólares que recibió de Maldonado fueron ingresados en dicho fondo por orden del señor Chacker, quien tomó cuarenta dólares de dicha cantidad; que le expresó a éste que no le gustaría que se llevara el dinero para San Juan pues pertenecía a un

proyecto de Ponce y no deseaba que se enredaran las cosas; (¹)
que el balance del dinero lo utilizó para satisfacer al señor
Carlos de Jesús la comisión que le correspondía con relación
al negocio de Maldonado, el salario de dos semanas al chofer
de la corporación Ramón Román, y para recoger varios
cheques sin fondos expedidos por Chacker a favor de acree-
dores, que le exigían responsabilidad al acusado como repre-
sentante en Ponce de la corporación; (²) que antes de cesar
en su empleo, cuadró el fondo de caja menuda y que la pri-
mera noticia que tuvo sobre los $300 a que se refiere la
acusación fue cuando recibió una notificación judicial; que
no puede producir los recibos porque los entregó a funciona-
rios de la corporación al rendir sus cuentas y éstos los retu-
vieron. En el contrainterrogatorio admitió que el procedi-
miento usual era que se remitían a San Juan los fondos que
ingresaban de negocios en Ponce y se solicitaba luego la
asignación de determinadas cantidades para cubrir los gastos
en que se incurría, pero insistió que en esta ocasión específica
el propio Chacker le autorizó para incluir el dinero recibido
de Maldonado en el fondo de caja menuda.

De la declaración escrita de Chacker pueden deducirse
dos circunstancias incriminatorias, que el dinero no se en-
tregó a la corporación y que era el deber del apelante remitirlo
a la compañía. Sin embargo, hay dos hechos salientes de la
declaración de Bonilla que no fueron controvertidos ni son
inverosímiles o incompatibles con las anteriores, y que no
pueden descartarse arbitrariamente en la apreciación de la
prueba. Se estableció que el importe pagado por Maldonado
se ingresó directamente al fondo de caja menuda con la
anuencia de Chacker, lo que explica la razón para que no se
remitieran a San Juan, y, es claro que se utilizaron los fondos

---

(¹) La prueba insinúa que la corporación se encontraba en dificultades
económicas y que no podía afrontar puntualmente sus obligaciones. Esto
explica los cheques sin fondos que fueron recogidos por el acusado.

(²) Mencionó específicamente a los señores Carlos Armstrong, Vasallo
y Rosado, suplidores de materiales.

para beneficio de la corporación y no para beneficio propio, hecho éste corroborado por la declaración del testigo de cargo Marsach. (³)

Hemos dicho en *Blanco* v. *El Pueblo*, 25 D.P.R. 720 (1917), que como elemento necesario del delito de abuso de confianza, la conversión es la apropiación fraudulenta de bienes ajenos para uso propio, y que apropiarse para uso propio no quiere decir necesariamente en su propio beneficio personal. Este *animus furandi* entraña la privación del uso y beneficio de los bienes al legítimo dueño. *Pueblo* v. *Holliday*, 53 D.P.R. 356 (1938); *Pueblo* v. *Martínez*, 50 D.P.R. 781 (1936). Aclaramos pues que cuando la disposición de los bienes redunda en provecho del propietario está ausente el elemento de apropiación fraudulenta. *Sparr* v. *People*, 219 P.2d 317 (Col. 1950). Y esa es la situación en el presente caso. No obstante la insistencia de la delegada del Procurador de que la prueba no identificó que los trescientos dólares fueron los que específicamente se utilizaron para pagar las obligaciones de la corporación a que se refirieron tanto el acusado como un testigo de cargo, a no otro resultado puede conducir si se considera la contemporaneidad de las transacciones con la fecha del recibo del dinero.

Si esto no fuere suficiente, como indicamos al comienzo de esta opinión, nos encontramos prácticamente en la misma posición que el juzgador para apreciar la prueba, pues la evidencia incriminatoria—que depende exclusivamente de dos manifestaciones aisladas, sin más explicación— consiste de una declaración escrita. El resto de la prueba de cargo, lejos de perjudicar, corroboró los extremos esenciales del testimonio del acusado sobre la existencia de autorización para disponer del fondo de caja menuda y el destino que recibió la suma supuestamente apropiada. En estas circuns-

---

(³) Presumimos que el fiscal ignoraba el uso que se dio a los fondos pues en la acusación se alegó expresamente que Bonilla los había utilizado en su propio beneficio.

tancias, lo menos que podemos decir, es que la prueba planteó la existencia de una duda real y fundada sobre la culpabilidad del acusado.

*Por todo lo expuesto, se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 14 de mayo de 1963, y se decretará la absolución del apelante.*