Callahan v. Kelso.

WILLIS CALLAHAN, Respondent, v. SAM S. KEL-
SO, Appellant.

Kansas City Court of Appeals, May 5, 1913.

1. **MALICIOUS PROSECUTION: Petit Larceny: Burden of
Proof.** In an action for malicious prosecution founded on the
plaintiff's acquittal of a charge of petit larceny, the burden de-
volves on the plaintiff to show affirmatively that the prose-
cution which terminated in his favor was instigated by the de-
fendant maliciously and without probable cause. And a prose-
cution is said to be malicious when actuated by hostile, angry
or vindictive motives, or when intentionally commenced and
carried on with knowledge that it is without legal justifica-
tion.

2. ————: **Probable Cause.** The probable cause which will re-
lieve a prosecutor from liability, is a belief by him in the guilt
of the accused, based on the circumstances sufficiently strong
to induce such belief in the mind of a reasonable and cautious
man.

3. ————: **Conversion of Property: Liability.** Where one takes
the property of another and converts it to his own use, but
takes it in good faith under color of a rightful claim, he is
not a thief but an honest wrongdoer and his liability is civil,
not criminal.

Appeal from Chariton Circuit Court.—*Hon. Fred
Lamb*, Judge.

AFFIRMED.

*F. C. Sasse* and *Roy McKittrick* for appellant.

*J. A. Collet* for respondent.

JOHNSON, J.—This is an action for malicious
prosecution the trial of which in the circuit court re-
sulted in a verdict and judgment for plaintiff in the
sum of $400 actual and $600 punitive damages. De-
fendant appealed and argues, first, that plaintiff failed
completely to sustain his burden of proof relating to

the issues of probable cause and malice and, second, that the assignment of actual damages in the verdict was so excessive as to indicate that the jury were swayed by passion and prejudice.

The parties lived on adjoining farms in Chariton county for many years and had been intimate friends. They had owned agricultural tools and implements in partnership and had other neighborly dealings. Shortly before the events that gave rise to this controversy they had a settlement which defendant admits had ended in an unreconciled difference of opinion over a claim made by plaintiff for the services of a boar. This misunderstanding did not cause an open breach but thereafter, to borrow defendant's description of their relationship, the parties were not on friendly "but just on neighborly terms." It appears that the various flocks of turkeys raised in the neighborhood in the year 1910 had exhibited a pronounced gregarious disposition and had selected defendant's orchard as their favorite haunt and roosting place. Defendant had six and plaintiff eight turkeys and these with perhaps four score more had amalgamated into one grand flock. The wife of plaintiff who had taken the pains to mark their turkeys by putting "a ring in the neck" of the parent birds and by cutting off the little toes of the young ones, had made many visits to defendant's farm to reclaim her own and invariably had brought them off without let or hindrance. On the last of these occasions, which was early in December, she went to defendant's farm accompanied by a boy, found and drove home her turkeys and put them in a pen with the exception of one that escaped. She did not meet defendant or any of his family but was in plain view of the house while driving the turkeys. About a week later plaintiff sold the turkeys to a huckster. The evidence of plaintiff tends to show that the turkeys were his property and there is no evidence in the record that he or his wife acted surreptitiously

or in any manner inconsistent with an honest belief that they were dealing with their own property. Defendant's turkeys disappeared and in his search for them he was informed of facts that led him to believe they had been taken by plaintiff. Instead of going direct to plaintiff he did a lot of detective work in the neighborhood, in the course of which he gave currency to the report that plaintiff had stolen his turkeys. After the lapse of a month or more he saw plaintiff and spoke to him about the turkeys. Plaintiff replied with a positive claim of ownership and asserted that he could produce the testimony of one of their closest neighbors in support of his claim. After this defendant procured the arrest and prosecution of plaintiff on a charge of petit larceny. Subsequently a trial of the case resulted in plaintiff's acquittal and this suit followed.

In answer to questions relating to his motive in laying a criminal charge against his neighbor defendant did not say that he believed the latter had taken his property with a criminal intent and the most he would say was that he believed plaintiff had taken his property and sold it.

The rules of law applicable to the facts of this case are well settled. Plaintiff's acquittal of the criminal charge, of itself, would not support an action for malicious prosecution. It amounted merely to an adjudication that he had not taken the turkeys belonging to defendant with the intent to steal them. The burden devolved on plaintiff to show affirmatively that the prosecution which terminated in his favor was instigated by defendant maliciously and without probable cause. [Eckerle v. Higgins, 159 Mo. App. 177; Christian v. Hanna, 58 Mo. App. 37; Casperson v. Sproule, 39 Mo. 39; Sappington v. Watson, 50 Mo. 83; Sharpe v. Johnston, 59 Mo. 558; Matlick v. Crimp, 62 Mo. App. 21.]

A prosecution is said to be malicious when actuated by hostile, angry or vindictive motives, or when intentionally committed and carried on with knowledge that it is without legal justification. [Christian v. Hanna, supra.] The existence of malice may be inferred from proof of want of probable cause but the latter fact cannot be inferred from proof of malice. As to the issue of want of probable cause the question is not whether the plaintiff was innocent of the criminal offense for which he was prosecuted but whether upon the facts established the defendant had probable cause to believe him guilty. [Cramer v. Harmon, 126 Mo. App. 54.] Innocence of the suspected person is not necessarily inconsistent with an honest belief of his guilt. [Brennan v. Tracy, 2 Mo. App. 540.] But such honest belief, to serve as a legal justification for an unsuccessful criminal prosecution must be a reasonable, not a captious or reckless "belief." "Probable cause which will relieve a prosecutor from liability, is a belief by him in the guilt of the accused, based on circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious man." [Wilkerson v. McGhee, 153 Mo. App. l. c. 349; VanSickle v. Brown, 68 Mo. 627; Lindsay v. Bates, 223 Mo. 294; Bosch v. Miller, 136 Mo. App. l. c. 491.]

Tested by these rules we conclude that the evidence tends to accuse defendant of having caused his neighbor to be prosecuted for a criminal and disgraceful offense without probable cause and with malicious purpose of doing him and his family a serious injury. In the facts and circumstances before him at the time he procured the arrest there was no suggestion of any criminal intent in the conduct of plaintiff and his wife and defendant's own testimony shows quite clearly that he did not believe they had intended to steal his property. Defendant appears to have believed that plaintiff had taken his turkeys and that such fact alone gave him the right to put the brand of thief on plain-

tiff to his lasting shame and disgrace. Instead of re-sorting to a civil action for an adjudication of his claim to the property, defendant, who was confronted with a strong and apparently well-founded denial of the claim, sought to misuse the criminal laws and processes to his own advantage and to the humiliation of his adversary. Of course the bare assertion of a claim to stolen goods will not prevent a conviction for larceny. [Witt v. State, 9 Mo. 672.] But where one takes the property of another and converts it to his own use but takes it in good faith under color of a rightful claim, he is not a thief but an honest wrongdoer and his liability is civil, not criminal. [State v. Claybaugh, 138 Mo. App. 360.]

The circumstances of which defendant had knowledge disclosed that regardless of whether the turkeys belonged to plaintiff or defendant plaintiff's claim to them was consistent with an honest intent and such being the case no reasonable and prudent man in the situation of defendant would have resorted to a criminal prosecution. The court did not err in overruling the demurrer to the evidence and in sending to the jury under proper instructions, the issues of probable cause and malice.

We cannot say, as a matter of law, that the assessment of actual damages in the verdict was excessive. The evidence shows that plaintiff incurred expense and loss of time in the amount of $50. The mental anxiety, pain and humiliation he suffered from a prosecution for a grave criminal offense were elements the jury were entitled to consider in the ascertainment of his compensatory damages. As is said by GANTT, J., in Carp v. Insurance Co., 203 Mo. l. c. 360: "The law concedes a wide latitude of discretion to the jury in actions of this class, and their verdict should not be interfered with unless the appellate court can say it was the result of prejudice, passion or malice. Numerous considerations must necessarily enter into the

question of what is just compensation in such a case, but no definite rule can be laid down to any of them. The law has provided that the jury shall decide this question. Disgrace is a relative term; what is such to one man is not necessarily so to another, and while it applies to each, its effect or measure is great or small as other conditions exist. Mental anxiety and pain caused thereby and humiliation and danger from a prosecution for a grave criminal offense, are all considerations for the jury, as well as the jeopardy in which the liberty of the plaintiff was placed by such prosecution.''

There is no prejudicial error in the record and the judgment will be affirmed. It is so ordered.

All concur.