**STATE of Missouri, Respondent,**

v.

**Bernard MEEKS, Appellant.**

**No. WD 31739.**

Missouri Court of Appeals,
Western District.

June 23, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1981.

Application to Transfer Denied
Sept. 8, 1981.

Howard L. McFadden, Richard J. Fredrick, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

KENNEDY, Presiding Judge.

Defendant Bernard Meeks after a jury trial was convicted of an escape from the Missouri State Penitentiary on June 2, 1978. As a persistent offender he was sentenced by the court to three years' imprisonment. Defendant has appealed to this court upon several allegations of error. We reverse for the court's failure to instruct upon defendant's proffered defense of mental disease or defect and remand for a new trial.

▇ The alleged error has not been preserved for review for the reason that the motion for a new trial was filed out of time, and hence was a nullity. Rule 29.11(b); *State v. Howard,* 476 S.W.2d 587, 588 (Mo. 1972); *State v. Kenton,* 298 S.W.2d 433, 434[1] (Mo.1957). Nor has it been preserved by defendant's brief, which cites no authority for the proposition except Rule 29.12(b), the "plain error" rule, nor presents any sort of analytical argument in support of the proposition. Rule 30.06(d); *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978); *State v. Johnson,* 539 S.W.2d 493, 509 (Mo. App.1976). We review the point in search of "plain error".

Defendant made his escape by secreting himself in a trailer load of furniture. He was missed at 5:00 o'clock p. m. and was discovered in the trailer in a warehouse outside the walls at 9:00 o'clock p. m.

Defendant did not deny the escape but relied upon mental disease or defect excluding responsibility as a defense. Sec. 552.-030, RSMo 1978.

Defendant's evidence on this point was his own testimony and that of fellow inmates in the penitentiary. McKinley Rob-

inson, a fellow prisoner, said that defendant on June 2, 1978, "seemed to have been depressed". Robinson said he saw defendant "going down into the industrial area . . . he seemed as though he was wandering at that time. I got him and took him to his cell". Robinson was asked if defendant had said anything to him. Robinson's answer: "A little bewildered, didn't know where you were going. I took you back to your cell, I seen you were having problems . . . a little bewildered, depressed, just like you was out of it, didn't know what you were doing . . . talking a lot of stuff that didn't make real good sense . . . like you are tired, can't take it no more, you didn't know what you were going to do." (Defendant was allowed to take the leading role in conducting his defense, and was conducting the examination of Robinson.) Robinson said that he saw defendant an hour or so later, when his condition was "about the same, but worse. I tried to get you to come back out of the industry area and we had a little bit of a shuffle . . . you said, told me to let you go, leave you alone . . ." Robinson said that he had seen defendant "bewildered" before, and that on several occasions he had had memory difficulties. "Well, several occasions where I would say something to you", Robinson testified, "you don't seem to remember right off or not at all." Five or six months after the escape, defendant had swallowed a broken knife and had gone to the hospital. At another time, "last year" —the trial was held January 11, 1980—Robinson described the following incident: "I was asleep and woke up and pulled you down when you were trying to tie a sheet around your neck on the bars within the cell . . . you were acting hysterical, didn't want to talk for a while, acting deeply depressed like you were out of it . . ." Roth Hogan, another prisoner, without relating defendant's behavior to the time of the offense, said: " . . . He is not the same all the times, sometimes I have come up to him at times and he didn't know who I was. It has been times where he acts kind of strange and I check on him every now and then and see how he is doing, and at times when I come before him he asks me who I am, it has been various occasions when that has happened, I don't know what it is from . . . I can say I'd see him like that at least three times in one week, this isn't every week, but three times in a week is the most I've ever seen him, but throughout the whole times I have seen him, go and come. . . ." Hogan said that in the early '70's when he and the defendant were both on the streets, defendant "took some pills at times, he was depressed about—I guess it was in the family." At another time in the penitentiary defendant had possession of a blade which his fellow inmates took away from him to prevent his threatened suicide.

Defendant's own testimony was that at the time of the offense he was depressed because his six-year-old son was dying of cancer and he had been denied permission to see him; that he was "in a daze". At about 5 o'clock in the afternoon of the day of the offense he remembered coming out of his cell and walking toward the industrial area. The next thing he remembered was Officer Eberle's hitting him in the head with a club in the warehouse outside the penitentiary walls. He recalled nothing about the truck in which he had made his escape. He had been having blackout periods since he was 12 yeas old. The blackouts would be from an hour in length to all day, he would be unable to recall what he did during the blackouts.

The foregoing evidence, which we have recounted in some detail, is "substantial evidence" of mental disease or defect which entitled the defendant to an instruction on the defense of mental disease or defect. *Tatum v. U. S.*, 190 F.2d 612 (D.C. Cir.1951). We do not intend to characterize the defendant's case for mental disease or defect as either strong or weak, but it is more than a scintilla. We might believe that the defendant's witnesses were of dubious veracity, or we might believe that their testimony was not plausible—or accepting their testimony as true, we might believe it does not show mental disease or defect excluding responsibility. But that is not our judgment to make. That is a judgment for the jury to make, and it was the

trial court's duty to submit the issue to the jury upon proper instructions, § 552.030(7), supra. *Tatum v. U. S.*, supra, 190 F.2d at 615–616; *Hall v. U. S.*, 295 F.2d 26, 30 (4th Cir. 1961).

The state cites *State v. Vansandts*, 540 S.W.2d 192 (Mo.App.1976), for the proposition that defendant's evidence did not constitute substantial evidence of mental disease or defect, pointing out that the testimony of defendant's mental condition in *Vansandts* was very much like the testimony of defendant's mental condition in the present case, and that the Eastern District of this court held that the evidence did not call for a mental disease or defect instruction. In *Vansandts*, however, the defendant was not arrested until almost two years after the offense with which he was charged, and the testimony related to his mental condition at that time and later, up to and including the time of the trial. A review of the testimony recited in the opinion reveals no evidence of his mental condition at the time of the offense. Of course, the mental disease or defect to furnish a defense must exist at the time of the offense. Judge Pritchard's opinion in *State v. Brizendine*, 391 S.W.2d 898, 901 (Mo.1965), another case holding that the evidence did not require a mental disease or defect instruction, emphasizes that there was no evidence of defendant's mental disease or defect *at the time of the offense.*[1] That is not the situation in the case now before us. There was evidence of mental disease or defect at the time of the offense.

 The failure to instruct upon a defense supported by the evidence is "plain error affecting substantial rights". Rule 29.12(b); *Tatum v. U. S.*, supra, 190 F.2d at 615; *U. S. v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977); *U. S. v. Alston*, 551 F.2d 315, 320 (D.C.Cir.1976); *State v. Harley*, 543 S.W.2d 288, 292 (Mo.App.1976).

For reasons hereinbefore set out, the judgment is reversed and remanded for a new trial. The other allegations of error need not be noticed.

All concur.

---

1. Of course, a mental disease or defect defense allows the proof to take the widest range as to time, encompassing even the defendant's whole life. While the inquiry is the existence of mental disease or defect existing at the time of the alleged offense, his behavior at times far removed from the time of the offense may be relevant upon that issue. *State v. Nickens*, 403 S.W.2d 582, 586 (Mo. banc 1966); *State v. Tarwater*, 293 Mo. 273, 239 S.W. 480, 486 (Mo. 1922).