STATE of Missouri, Respondent,

v.

James QUISENBERRY, Appellant.

No. 63564.

Supreme Court of Missouri,
En Banc.

Aug. 31, 1982.

Rehearing Denied Oct. 12 and
Oct. 28, 1982.

James G. Gregory, John Edward Cash, Montgomery City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RENDLEN, Judge.

Defendant was convicted of stealing property with a value of $150 or more [1] and

1. Section 570.030 RSMo 1978. Defendant's alleged crimes occurred on December 5, 1979.

Unless otherwise noted, the applicable law is, and all statutory references are to RSMo 1978.

second degree burglary,[2] two class C felonies. Though the jury assessed punishment at one year for each offense, the trial court sentenced defendant to concurrent terms of two years for each offense. Review was sought in the Court of Appeals, Western District, which reversed and remanded both convictions, but the cause was certified here on dissent of Manford, J. It will be determined as though on original appeal.

Defendant claims the trial court erred in (1) failing to instruct the jury on the special negative defense of "claim of right", (2) admitting defendant's signed confession into evidence, even though it was transcribed from a tape recording and, allegedly, not the best evidence, and (3) sentencing defendant to prison terms in excess of those imposed by the jury.

The pertinent facts are as follows:

In late 1979, hunting partners David Hook and Raymond Bell shot approximately 15 raccoon and 3 opossum. The pelts from these animals were stored in a freezer at David Hook's Fulton, Missouri home. On December 2 of that year, Eugene (familiarly known as "Buger") Hook, David Hook's 16 year old nephew, visited his uncle and saw David Hook put the pelts in his freezer. Three days later, on the morning of December 5, Buger Hook, defendant James Quisenberry (Buger Hook's stepfather),[3] and defendant's friend Danny Neal were "riding around" Fulton in defendant's car. Danny Neal was driving. Between 11:30 a. m. and 12:15 p. m. they stopped the car near the home of David Hook; Buger got out and went into his uncle's house. Defendant and Neal remained in the car. Finding no one at home, Buger removed the pelts from the freezer, took them to the car and put them in the trunk. Buger, Danny Neal, and the defendant then drove to Mexico, Missouri, where they sold all the pelts except one to fur buyer John Gibbons for $273. Proceeds from the sale were divided as follows: $110 to defendant, $110 to Danny Neal, and $53 to Buger Hook. One pelt was left in the car, which defendant later traded to Jake Womack, his wife's stepfather, for a shotgun. Defendant was arrested and charged with second degree burglary and stealing property with a value of $150 or more. At trial, he denied complicity in the planning or commission of a theft. Although he admitted riding around with Buger and Danny Neal on the morning of December 5th, defendant claimed that for most of the morning he was asleep in the back seat of the car. Defendant testified that he was completely unaware any pelts were appropriated until he awakened in Mexico to Burger's explanation that he had taken the furs because of a debt owed to him by his uncle.

Buger Hook also testified on defendant's behalf. On direct examination, he corroborated defendant's testimony that he, Buger, alone entered David Hook's house and took the furs. According to Buger, David Hook owed him approximately $300 for hauling timber, and he took the furs believing he had a right to do so because he had not been paid. Buger testified that defendant was asleep when the pelts were taken and did not assist or participate in the taking.

Contrary to this testimony, the State introduced a typewritten statement, signed by defendant. In the statement, defendant confessed that he, Buger and Danny Neal discussed taking the furs prior to the stop at David Hook's house. Defendant also stated that in preparation for the stop, the trio went to an IGA store for a box to hold the furs; defendant and Neal then took Buger down to David Hook's house, let him out, and waited in the car until he returned with the furs. In response to the question, "[Y]ou knew when you were down there and the boy went in that these furs were stolen then?" defendant said, "Yes." The signed statement admitted in evidence was a typed transcript of a recording of an oral statement made by defendant to the police.

2. Section 569.170.

3. Defendant is married to Buger Hook's mother. Buger Hook's father is the former husband of Buger's mother and is David Hook's brother.

## I.

Defendant claims the trial court erred in failing to instruct the jury on the special negative defense of claim of right created in § 570.070:

> 570.070. 1. A person does not commit an offense under section 570.030 [stealing] if, at the time of the appropriation, he
>
> (1) Acted in the *honest belief* that he had the right to do so; or
>
> (2) Acted in the honest belief that the owner, if present, would have consented to the appropriation.
>
> 2. The defendant *shall have the burden of injecting* the issue of claim of right. (Emphasis added).

When a defendant has the "burden of injecting" an issue, the issue is not submitted to the trier of fact unless supported by evidence, § 556.051(1). Although an honest claim of right is a defense to the crime of stealing and, in certain situations, burglary,[4] we find that defendant failed to inject the issue sufficiently to justify claim of right instructions.

Defendant was convicted, not as the principal,[5] but for aiding Buger Hook in the commission of the crimes of second degree burglary and stealing property with a value of $150 or more. Accountability for the conduct of another is addressed in several sections of Missouri's criminal code. Sections 562.036 and 562.041 provide that unless a defendant has the requisite culpable mental state at the time he aids another in the commission of an offense, he cannot be convicted as an accomplice to the offense. Without the culpable mental state necessary for theft[6] and entry of a building with the intent to steal, defendant is not guilty of those offenses. Section 570.070 recognizes that a creditor who takes property from his debtor in settlement of a debt lacks the requisite mental state for stealing if he honestly believes he has a legal right to settle the debt in that manner.[7] It fol-

---

4. Section 570.070.1(1) provides that a person does not commit the crime of stealing if he takes property under an honest claim of right. It follows that an honest claim of right is also a defense to a charge of burglary based on entry of a building with the intent to steal.

5. For most purposes, the common law distinctions between principal in the first degree, principal in the second degree and accessory before the fact have been abolished. We use the term "principal" here, however, to mean a person who personally has committed all elements of an offense, as distinguished from "accomplice," used here to mean a person who has not personally committed all elements of an offense but is guilty of the offense, because he assisted another in its commission.

6. In Missouri, the requisite mental state for stealing is a purpose to deprive another of his property, either without his consent or by means of deceit or coercion, and without an honest belief in a right to appropriate the property or that the owner, if present, would consent to the appropriation. Sections 570.030 and 570.070.

7. Ordinarily, a mistake of law is no defense to a criminal charge unless it negates the mental state necessary for commission of the crime. See § 562.031. At common law, the requisite mental state for simple larceny was a felonious intent to deprive another of his property, without his consent. *Witt v. State,* 9 Mo. 671, 672 (Mo.1846). An honest albeit erroneous belief that one was the owner of property he took, or had a legal right to possession thereof, negated the intent to wrongfully deprive another of his property and was a complete defense to a charge of stealing. *State v. Holtzclaw,* 258 S.W.2d 666, 672 (Mo.1953). Likewise, an honest albeit erroneous belief in the right to take the money of another in satisfaction of a debt owed negated the felonious intent necessary for the crime of robbery. *State v. Brown,* 104 Mo. 365, 16 S.W. 406, 407 (1891); *State v. Culpepper,* 293 Mo. 249, 238 S.W. 801, 803 (1922). And an honest though erroneous belief in a right to take the property of another as security for a debt owed negated the requisite mental state for embezzlement. *State v. Hurley,* 234 S.W. 820, 823 (Mo.1921); *State v. Reilly,* 4 Mo.App. 392, 399–400 (1877). Although there is no case precisely in point, it follows that an honest though erroneous belief one has a right to take the property of another in satisfaction of a debt owed negates the felonious intent necessary for stealing. Although there is authority to the contrary, See 3 Wharton, Criminal Law § 366 at 340–41 (1980), this appears to be the majority view. 3 Wharton, Criminal Law § 366 (1980); 52A C.J.S. *Larceny* § 26b (1968); 50 Am.Jur.2d § 41 (1970). The criminal code, it appears, made no relevant change in the common law elements of larceny. See §§ 570.030 and 570.070. The language of § 570.070 easily embraces the common law rule, and we have been cited to no authority,

lows that a defendant likewise lacks the requisite mental state for stealing if he honestly believes a person he assists in taking property has a legal right to do so. Section 570.070.2 is explicit, however: The defendant who asserts a claim of right has the *burden of injecting the issue*[8]; the issue is not submitted to the trier of fact unless supported by evidence. In this case, the defendant clearly failed to inject the issue of his own belief in a right to take David Hook's property. The State's evidence on one hand, demonstrated that defendant aided Buger Hook knowing full well the "furs were stolen." Defendant's evidence, on the other, was that he was asleep and completely unaware of any appropriation. There was no evidence by either side that the defendant assisted Buger Hook in the belief he or Buger had a right to take the pelts. The absence of such evidence justified omission of the instruction.

Defendant also contends that the trial court erred in failing to instruct the jury that if *Buger Hook* took the furs in an honest belief *he* had a right to do so, defendant must be acquitted. Defendant claims that if Buger lacked the requisite mental state for the crime of stealing, no crime was committed; regardless of the culpability of his own mental state, he cannot be convicted as an accomplice to a crime that did not occur. Although the criminal code supports this contention, we find that the defendant also failed to "inject" the issue of Buger Hook's claim of right.

Prior to January 1, 1979,[9] § 556.170[10] provided that a principal in the second degree in the commission of any felony or accessory before the fact to any murder or other felony could be adjudged guilty of the offense in the same degree and could be charged, tried, convicted and punished in the same manner, as the principal in the first degree. In *State v. Lute,* 608 S.W.2d 381 (Mo. banc 1980), we noted that under this law, one who aided another in the commission of a crime could not be guilty of a greater crime than the actor had an intent to commit. 608 S.W.2d at 384. On January 1, 1979, § 556.170 was replaced by §§ 562.036, 562.041, 562.046 and 562.051, RSMo 1978. Section 562.036 provides that a person with the required culpable mental state is guilty of an offense if *it is committed* by the conduct of another person for which he is criminally responsible. Section 562.041, in pertinent part, provides that a person is criminally responsible for the conduct of another when "... [e]ither before or during *the commission of an offense* with the purpose of promoting the commission of an offense, he aids ... such other person in ... *committing ... the offense....*" (Emphasis added). Under these provisions, commission of an offense seems to be a condition precedent to criminal responsibility based on the conduct of another, and § 570.070 expressly provides that a person does *not commit the offense* of stealing if he appropriates property under an honest claim of right.

Section 562.046, moreover, enumerates certain defenses an accomplice may not raise. It is no defense to a prosecution for an offense in which the criminal responsibility of the defendant is based upon the conduct of another that "... [s]uch other person has been acquitted or has not been convicted or has been convicted of some other offense or degree of offense or lacked criminal capacity or was unaware of the defendant's criminal purpose or is immune from prosecution or is not amenable to justice; ..." Conspicuously absent from the list of barred defenses is a defense that such person lacked the culpable mental

statutory language or legislative history indicating that the legislature intended anything else.

**8.** Claim of right, like self-defense and entrapment, is referred to as a special negative defense. Inherent in the concept of the special negative defense is the idea that the act

charged was committed, but by reason of the defense, it did not possess the qualities of criminality.

**9.** The effective date of the criminal code, SB 60, 1977 Mo. Laws 658.

**10.** RSMo 1969.

state necessary for the crime. The treatment of culpable mental states in the code is quite thorough; Section 562.051,[11] in fact, clearly contemplates that different mental states might lead to conviction of different degrees of the same offense. Absent any evidence to the contrary, we assume the omission in § 562.046 was intentional, and that the defense is not barred. In sum, we have been cited to no authority or legislative history and can find no statutory language to support a conclusion the legislature intended to change the precode law[12] and allow conviction of an accomplice for a greater crime than the principal had an intent to commit.[13] While a finding that Buger Hook took the furs under an honest claim of right would preclude a finding that defendant Quisenberry is guilty of stealing or entering a building with the intent to steal, defendant did not "inject the issue" of Buger Hook's claim of right, and the court

11. Section 562.051 provides that, except as otherwise provided, when two or more persons are criminally responsible for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own mental state and with his own accountability for an aggravating or mitigating fact or circumstance.

12. Although we recognize there might be a good reason for doing so. *See* Comment, Accomplice Liability under the 1979 Missouri Criminal Code, 44 Mo.L.Rev. 233 (1979).

13. Unless, of course, the conduct of the accomplice can be said to have caused the crime, as when, e.g., the accomplice directs an innocent agent to perform the criminal act.

14. Buger Hook testified to his own belief in a right to take the furs. Defendant testified that after the furs were sold in Mexico, Buger told him he had taken the furs because David Hook owed him money. Buger Hook's mother (defendant's wife) testified that in March, 1980, Buger told her that David owed him money and taking the furs was "the only way he could get his money out of David."

15. Clearly, one has no legal right to take the property of another in satisfaction of an unrelated debt without the permission of the owner. Claim of such "honest belief" is, ordinarily, somewhat suspect. However, the belief would negate the felonious intent necessary for stealing, and it is rightly recognized as an issue upon which the defendant does not have the burden of proof. Section 556.051(2).

did not err in failing to instruct on this special negative defense.

At trial, the only evidence of Buger Hook's claim of right were statements by Buger Hook that when he took the furs, he believed he had a right to do so.[14] If the unadorned self-serving statements of the defendant or principal were sufficient to "inject the issue," there would be virtually no evidentiary burden on the defendant. To warrant submission of the claim of right defense, there must be, apart from testimony of the defendant or principal as to his subjective belief, sufficient evidence to enable the court to infer that the relevant person *honestly* held that belief.[15] Except for Buger's recital that his uncle owed him money, there was no evidence of any facts or circumstances on which such a belief could honestly have been based. When he

All we hold today is that the burden on the defendant to "inject the issue" of claim of right includes adducing evidence of facts from which, in the context of the entire case, the honesty of his belief can reasonably be inferred.

This decision comports with venerable common law. In 1846, it was said, ". . . If the bare assertion of a claim to stolen goods shall prevent a conviction for larceny, there is no protection to property against the invasion of predators." *Witt v. State,* 9 Mo. 671, 673 (1846). If the bare assertion of a claim of right is insufficient to prevent conviction, it is insufficient to send the issue to the jury, at least when the evidence discloses facts and circumstances tending to show the claim is a mere pretense. *In accord, Callahan v. Kelso,* 170 Mo.App. 338, 156 S.W. 716, 718 (1913); *State v. Claybaugh,* 138 Mo.App. 360, 122 S.W. 319, 321 (1909). We have searched in vain for a case submitting a claim of right to the jury in the absence of facts and circumstances lending "color" to such claim. In cases discussing the claim of right defense, in fact, it has usually been described as, "a fair color of claim or title," *State v. Homes,* 17 Mo. 379, 381 (1852); "in good faith under color of rightful claim," *State v. Holtzclaw,* 258 S.W.2d 666, 672 (Mo. 1953); *State v. Claybaugh,* 138 Mo.App. 360, 122 S.W. 319, 321 (1909); *Callahan v. Kelso,* 170 Mo.App. 338, 156 S.W. 716, 718 (1913).

The legal encyclopedias emphasize that a claim of right must be more than a vague impression; it must amount to an honest conviction 52A C.J.S. Larceny § 26A (1968); 50 Am.Jur.2d § 41 (1970).

testified, David Hook was not asked about the "debt." There was no evidence Buger knew or believed the pelts belonged to his uncle. In fact, it was undisputed that they were owned by his uncle and David Bell. There was no evidence the taking was open to lend credence to his claim of an honest belief. The evidence was that the furs were clandestinely removed without the knowledge of anyone but Buger, Danny Neal and, perhaps, the defendant. They were taken, furthermore, during the only 40 minutes of the day that the house was unoccupied. There was no evidence Buger was ever told by anyone that he had a right to take another's property in satisfaction of a debt. He expressly said that the defendant had not led him to that belief. None of the other undisputed facts corroborate Buger's claim to an honest belief he had a right to take the furs. The house was closed. The furs were enclosed in a freezer. Buger checked to see if anyone was home before taking the furs. He left town to sell them. Danny Neal's hunting license was used to effect the sale. Buger received less than 40% of the proceeds from sale of the furs. He left a fur in the back seat, which was later traded by defendant to Jake Womack. Finally, in Buger's first two statements to the police, there was no evidence of a claim of right. At best, the inferences that can be drawn from the evidence are merely neutral. At worst, they are damaging. The naked assertion of an honest belief in a legal right, unsupported by any evidence of facts or circumstances from which such a belief might reasonably be inferred, is insufficient to satisfy the defendant's burden of injecting the issue of claim of right under § 570.070. Accordingly, defendant's claim that he was entitled to an instruction requiring acquittal if the jury found Buger

Hook acted under a claim of right is without merit.

## II.

▮ Defendant also challenges the admission in evidence of a typewritten statement in which he confessed complicity in the theft. On December 21, 1979, defendant was taken into custody. He waived his rights to remain silent and to have an attorney present[16] and, later that day, gave an oral statement to sheriff's deputies. The statement was taped, and the tape was transcribed onto police forms by a secretary at the sheriff's department. The typed statement was then given to the defendant; he was asked to read it, see that it was the statement he had made, initial any mistakes he found and sign it. Defendant took the statement, initialed several typographical errors and signed all but the last page. Defendant argues the tape was the best evidence, which should have been admitted so the jury could evaluate whether or not the statement was voluntary and given from actual knowledge.[17]

Defendant's "best evidence" argument is based on the notion that the typewritten statement was a mere transcript of the taped interview and not an independent statement.[18] Defendant argues that his limited reading ability prevented his signature from validating the written statement. At trial, defendant was asked whether he could read and write. He answered that he could read "Some. Not real good, but . . . a lot of words I can't spell and stuff." Defendant testified that he completed the 8th grade and started the 9th grade before his formal education ended. He also said he was in special education, but the record

16. After defendant's rights were read to him, he signed a written waiver of rights form. He does not claim the waiver was involuntary.

17. At trial, defendant testified that the officers present told him what to say, and he gave the statement as instructed, even though it was not true.

18. If the typewritten statement were not an independent statement, and we find that it was, the best evidence rule would not seem to apply. The best evidence rule applies when a party attempts to prove the contents of a writing. Without the independent statement in this case, the content of defendant's oral statement, not the recording, would be at issue. All relevant evidence of the content of his statement, so long as properly identified and authenticated, would be admissible.

fails to disclose what type of special education. Defendant's wife testified she didn't think he could read. Defendant testified that he probably could have read some of the statement but didn't, and that the statement was read to him after it was typed up. It was conceded that after the statement was "typed up," defendant took it into his hands, looked at it, initialed corrections and signed each page. There is no evidence of any discrepancy between defendant's written and oral statements. While it appears that defendant was not possessed of strong reading ability, we find insufficient evidence to upset the trial court's finding that the typewritten confession was the voluntary and independent statement of the defendant. *See State v. Frazier,* 587 S.W.2d 368 (Mo.App.1979).

### III

Defendant finally contends the trial court erred by imposing a sentence longer than that assessed by the jury. This contention is correct. While such error does not require reversal of defendant's convictions, remand is necessary for the purpose of resentencing.

■■■ Under Missouri's criminal code, primary responsibility for assessing maximum terms of imprisonment rests with the jury, § 557.036.[19] Only in rare instances may the court impose a sentence longer than the term assessed by the jury. *See* §§ 557.036.2 and 557.036.3. When a term declared by the jury is less than the authorized lowest term for an offense,[20] however, the court may impose a longer term, so long as it is not in excess of the lowest term provided for the offense. § 557.036.3(1).

■■ Turning now to the facts of this case, defendant's jury returned the following verdicts:

As to Court I,

> We, the jury find the Defendant James Quisenberry guilty of burglary in the second degree as submitted in Instruction No. 8. We assess and declare the punishment at imprisonment in the county jail for a *term of one year.* (Emphasis added.)

As to Count II,

> We, the jury find the Defendant James Quisenberry guilty of stealing property of a value of at least $150 as submitted in Instruction No. 13. We assess and declare the punishment at *one year* and jury recommends that sentences be run concurrent.[21] (Emphasis added.)

19. Section 557.036 in pertinent part provided:
557.036. 1. Subject to the limitations provided in subsection 3 upon a finding of guilt upon verdict or plea, the court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly
2. The court shall instruct the jury as to the range of punishment authorized by statute and upon a finding of guilt to assess and declare the punishment as a part of their verdict, unless the defendant requests in writing that the court assess the punishment in case of a finding of guilt. . . .
3. If the jury returns a verdict of guilty and declares a term of imprisonment as provided in subsection 2 of this section, the court shall proceed as provided in subsection 1 of this section except that any term of imprisonment imposed cannot exceed the term declared by the jury unless:
(1) The term declared by the jury is less than the authorized lowest term for the offense, in which event the court cannot impose a term of imprisonment greater than the lowest term provided for the offense; . . ."

20. Defendant contends that when used in § 557.036.3(1), "authorized lowest term for the offense" means the lowest term provided for the offense. Because the court is granted discretion in cases of class C and D felonies to impose a special term not exceeding one year, § 558.011.2, defendant claims the "authorized lowest term" for a class C felony is one day. We find, however, that "authorized lowest term" in § 557.036.3(1) means the lowest "authorized term" specified in § 558.011.1, RSMo Cum.Supp.1981. In the case of class C and D felonies, the lowest authorized term is a "term of years." The interpretation defendant urges would strip the words "of years" in § 558.011.-1(3) and (4) of all meaning.

21. These verdicts conform to jury instructions No. 8 and 13, which were in accord with MAI–CR 2d 2.12, and instructed the jury as to each count:
If you do find the Defendant guilty under Count I of burglary in the second degree

Nevertheless, the trial court sentenced defendant to two years in the Division of Corrections[22] on each count, the sentences to run concurrently. With sentence, the trial court entered the following finding:

> ... The court specifically finds that the jury has returned a sentence less than the authorized lowest term of which is two years in the Division of Corrections as per Section 558.011, Paragraph 1, RSMo .... The court therefore in accordance with Section 557.036, Paragraph 3, Sub. 1, fixes punishment on Count I at two years in the Division of Corrections and on Count II at two years in the Division of Corrections.[23]

The question for determination is whether the jury's sentence of one year on each count is less than the authorized lowest term for class C felonies. If not, court imposition of a longer sentence is error.

Section 558.011, RSMo Cum.Supp.1981, provides in pertinent part as follows:

> 558.011. 1. The authorized terms of imprisonment, including both prison and conditional release terms are:
>
> (1) For a class A felony, a term of years not less than ten years and not to exceed thirty years, or life imprisonment;
>
> (2) For a class B felony, a term of years not less than five years and not to exceed fifteen years;
>
> (3) *For a class C felony, a term of years of not to exceed seven years;*
>
> (4) For a class D felony, a term of years not to exceed five years;

(5) For a class A misdemeanor, a term not to exceed one year;

(6) For a class B misdemeanor, a term not to exceed six months;

(7) For a class C misdemeanor, a term not to exceed fifteen days.

2. In cases of class C and D felonies, the court shall have discretion to imprison for a special term not to exceed one year in the county jail or other authorized penal institution, and the place of confinement shall be fixed by the court. If the court imposes a sentence of imprisonment for a term longer than one year upon a person convicted of a class C or D felony, it shall commit the person to the custody of the division of corrections for a term of years not less than two years and not exceeding the maximum authorized terms provided in subdivisions (3) and (4) of subsection 1 of this section.

3. (1) When a regular sentence of imprisonment for a felony is imposed, the court shall commit the defendant to the custody of the division of corrections for the term imposed under section 557.036, RSMo, or until released under procedures established elsewhere by law. (Emphasis added.)

 The trial court interprets the plural in "term of years" to mean the minimum sentence for a class C felony is two years.[24] Although a literal reading might support this interpretation, the statutory context convinces us "term of years" means a term of whole years and not less than one.

---

(Count II of stealing property of value of at least one hundred and fifty dollars), you will assess and declare the punishment at:

1. Imprisonment in the Division of Corrections for a term fixed by you, but not less than two years and not to exceed seven years, or

2. Imprisonment in the county jail for a term fixed by you but not to exceed one year.

**22.** The Division of Corrections is now the Division of Adult Institutions of the Department of Corrections and Human Resources.

**23.** The court also noted that, considering the defendant's background and prior convictions, it declined to exercise discretion granted in § 558.011.2 RSMo Cum.Supp.1981, to order de-

fendant to serve a special term in the county jail.

**24.** The phrase "term of years" is meant to establish a minimum sentence of at least one year for class C and D felonies. When a minimum sentence of less than a year is intended in other parts of the statute, "of years" is omitted, and the sentence is described simply as, "a term not to exceed ...." Section 558.011.1(5), (6) & (7). When § 558.011 was amended in 1979, furthermore, the words, "of years" were inserted into § 558.011.1(3) (authorized term of imprisonment for a class C felony), further indicating they are intended to have meaning. The issue, as we see it, is whether the minimum "term of years" is one year or two and the trial court erred in holding it meant "two years."

Prompting this conclusion are the following indicia of legislative purpose:

When a minimum sentence of more than one year is intended in other parts of § 558.011, RSMo Cum.Supp.1981, the sentence is described in terms of a minimum and maximum number of years. The authorized term of imprisonment for a class A felony is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment. § 558.011.1(1). The authorized term of imprisonment for a class B felony is "a term of years not less than five years and not to exceed fifteen years." Section 558.011.1(2). If the legislature had meant for class C felonies to carry a minimum sentence of two years, it logically would have continued the pattern established in class A and B felonies and specified "a term of years not less than two years and not to exceed seven years." Failure to do so, we think, evidences a legislative intent to set the minimum sentence at less than two years.

When the legislature intended to establish a minimum sentence of two years in subsection 2, furthermore, it said "a term of years not less than two years," rather than simply "a term of years." The amplification in subsection 2 raises an inference that when "term of years" stands alone in subsection 1, it comprehends a term of less than two years.

Finally, the statute which formerly prohibited a sentence to the penitentiary of less than two years, § 546.490, RSMo 1969, was repealed on January 1, 1979.[25] The relatively clear language of § 546.490, RSMo. 1969 was replaced by § 558.011,[26] the statute at issue here. Unlike its predecessor, § 558.011, RSMo Cum.Supp.1981 does not exclude the possibility that a regular sentence of one year in the Division of Corrections might be imposed for class C and D felonies. Subsection 3 requires the court to commit regularly sentenced class C

and D felons to the Division of Corrections. Subsection 2 grants the court discretion to impose on class C and D felons a special term not to exceed one year in the county jail or other authorized penal institution, and requires the court to commit class C and D felons sentenced to terms *longer than one year* to the division of corrections. These provisions permit the conclusion that if a class C or D felon is sentenced to a term of one year, the court has discretion to commit him either to the Division of Corrections for a regular sentence (Subsection 3), or to the county jail or other authorized penal institution for a special term (Subsection 2). At best, the statute is ambiguous, and we believe the ambiguity should be resolved in favor of maximum discretion in the jury.[27] Accordingly, we rule that the minimum authorized term of imprisonment for a class C felony under § 558.011.1(3) is one year.[28] Defendant's convictions are affirmed, but because the sentence assessed by the jury was not less than the authorized lowest term for a class C felony, the case is remanded for resentencing consistent with this opinion.

DONNELLY, C. J., and MORGAN and HIGGINS, JJ., concur.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER and BARDGETT, JJ., concur in part and dissent in part and concur in separate opinion of SEILER, J.

SEILER, Judge, concurring in part and dissenting in part.

I concur in that portion of the opinion which holds that if the jury verdict is valid that the sentence of one year on each count was not less than the authorized lower term for a class C felony.

I dissent as to that portion of the opinion which holds that the defendant did not suc-

---

**25.** S.B. 60, 1977 Mo. Laws 658.

**26.** RSMo 1978, as amended, RSMo Cum.Supp. 1981.

**27.** We find nothing in § 557.036 or 558.011 that authorizes the jury to set the place of confinement.

**28.** Dicta in *State v. Moland,* 626 S.W.2d 368, 371 (Mo.1982) notwithstanding.

ceed in injecting the claim of right under § 570.070.

The verb "inject" in the sense used in the statute means "to introduce as an element or factor in or into some situation or subject". Webster's Third New International Dictionary, Unabridged (1967), p. 1164. It is not a word of arcane, mysterious or technical meaning. Here Buger Hook said his uncle David Hook owed him three weeks' wages for working in the timber and that he went to David Hook's house to get his money; that he took the furs because David Hook would not give him the money owed for the timber work; that he thought he had a right to go in the house and get the furs because his uncle, David Hook, owed him the money. The defendant testified that he did not know the furs were in the car until on the way to Marshall and that Buger Hook told him he took the furs for wages due from David Hook.

The foregoing testimony "injected" or introduced into the case the element of claim of right because the jury had the right to believe and could have believed had they chose to do so, based upon the foregoing testimony with nothing more, that Buger Hook acted in the honest belief that he had the right to take the furs and that defendant took him at his word.

What the principal opinion declares, in effect, is that Buger Hook's testimony and that of the defendant is unbelievable, that despite the foregoing testimony there is no evidence of any honest belief on the part of either Buger Hook or defendant.

How can we say that the jury would not have believed Hook or defendant had the proposition been put to them under MAI–CR2d 2.37.3.2? The jury was there and heard the evidence, saw the witnesses and their demeanor and the jury is the sole judge of the weight and credibility of the evidence, not this court. It makes no difference whether we believe the testimony or not.

The question is not believability, but submissibility. *State v. Brown,* 104 Mo. 365, 16 S.W. 406, 407 (1891). What was said in *State v. Meeks,* 619 S.W.2d 830, 831–32 (Mo.

App.1981) about the quality and quantity of the evidence injecting submission of the defense of mental disease or defect (which is also a special negative defense, MAI–CR2d 3.74, Notes on Use 6) is appropriate here also:

We do not intend to characterize the defendant's case for mental disease or defect as either strong or weak, but it is more than a scintilla. We might believe that the defendant's witnesses were of dubious veracity, or we might believe that their testimony was not plausible— or accepting their testimony as true, we might believe it does not show mental disease or defect excluding responsibility. But that is not our judgment to make. That is a judgment for the jury to make, and it was the trial court's duty to submit the issue to the jury upon proper instructions, . . . .

The principal opinion sets forth various reasons on pages 8–9 as to why Buger Hook should not be believed. This would have been appropriate jury argument for the state at the trial level. It has no place here where we do not pass on the credibility of the witnesses.