**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Larry L. SLOAN, Defendant-Appellant.**

**No. WD 33829.**

Missouri Court of Appeals,
Western District.

Jan. 3, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and
Denied Feb. 28, 1984.

James R. Sandifar, John Edward Cash, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., George W. Cox, III, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The defendant appeals a jury conviction for stealing property having a value greater than $150, Section 570.030, RSMo. 1978,[1] and a sentence of one year imprisonment in the county jail and a $5000 fine. The original information was filed on January 4, 1982 in Ray County and the trial set for March 5, 1982. On motion of defendant venue was changed from Ray to Carroll County on January 25, 1982.

On March 3, 1982, two days before trial of March 5, defendant filed a written motion for a continuance accompanied by affidavit. The motion raised as grounds for the continuance the sudden death of defendant's mother and cousin caused by carbon monoxide poisoning on March 1, 1982. The funeral was on March 4. The motion stated the deaths and funeral prevented defendant and counsel from conferring before trial and rendered counsel unable to prepare the case. No previous continuances had been requested. The trial judge overruled the motion, stating, "[W]hile I agree that we all have tragic difficulties in our family, this matter has been set for some time on a change of venue down here

---

1. All statutory references are to Missouri Revised Statutes 1978 unless otherwise indicated.

to Carroll County from Ray County and there's been a lot of delay in this trial ..." Counsel for defendant then made an offer of proof through the testimony of defendant, who stated that he had no opportunity to confer with counsel since the death of his mother, and was in no condition to defend himself on the criminal charge. The court granted the state's motion in limine preventing the introduction of any evidence concerning the death of defendant's mother.

Defense counsel orally moved to quash the jury panel based upon objections to the method of procuring additional or talesman jurors after exhaustion of the original panel. After beginning with a nineteen-member panel, the court ordered Sheriff Paul Johnson of Carroll County to procure additional panel members. Johnson along with Deputy Sheriff Richard Ackerman telephoned persons around the Carrollton area who could arrive by 10:00 a.m., selecting nearby business-persons and farmers who could be reached. Deputy Ackerman stated he would "visually [start] on the square and go out from there." Johnson testified he did not select friends of his, nor persons known to favor the state's case, did not personally know all of those selected, and selected persons by random. Deputy Ackerman testified he did know the persons called but was not their personal friends.

The defendant does not question the sufficiency of the evidence: the jury could reasonably have found the following facts to be true. Sloan farmed land in Caldwell County. He and Tom Umphreys, who testified on behalf of the state, drove in a truck on the evening of October 16 to Kenneth Penny's farm. The defendant had told Umphreys he wanted to steal a combine for his own beans. The two spotted Penny's combine and examined it for keys and fuel. Umphreys then drove it away without its lights on while Sloan followed him in the truck. They switched drivers somewhere down the road. Two days later Umphreys saw Sloan using the combine at his own farm. Umphreys pleaded guilty to stealing the combine.

The next day Penny found missing his John Deere 600 combine, along with about 140 bushels of beans and some tools. He called the sheriff's office, and Deputy Gary Foote responded. Together they followed tracks on Route E out of Ray County into Caldwell County, but to no avail. Foote notified the Caldwell County sheriff.

Sheriff Maurice Robinson of Caldwell County, who was investigating the theft, talked with Sloan at the Kingston Courthouse where Sloan was obtaining a license for a car or truck. Sloan was not yet under investigation for the theft, but Robinson knew Sloan personally. When asked about the combine Sloan became visibly ill, had to sit down, and finally left without obtaining a license. The next day officers visited Sloan's farm to inquire about the combine. Sloan told them that the combine was brought to his place by someone who had wanted to sell it, and that he could recover it if given some time. Within two hours Sloan called the sheriffs back and led them to a creek in a bean field, about a mile and a quarter from Sloan's property, where the combine lay hidden. Sloan was not arrested at this time, but later voluntarily talked with Deputy Foote on two occasions. First Sloan said he had found the combine, later he stated he had obtained the combine from an associate from Iowa, known only to him as "Junior". On the day of his arrest, the defendant made a statement to the effect that Umphreys had stolen it.

As his first point, the defendant argues the court abused its discretion in denying his application for a continuance based upon the sudden death of his mother and female cousin less than four days before trial because defendant was unable to consult with counsel concerning his defense just before trial and was emotionally unprepared to go to trial. He claims a deprivation of effective assistance of counsel and of a fair trial.

■ An application for a continuance rests within the sound discretion of the trial court. An appellate court will indulge in every intendment favoring the action of the trial court and reserve interference with its actions only in the presence of a

clear abuse of the trial court's discretion. *State v. Winston,* 627 S.W.2d 915 (Mo.App. 1982); *State v. Oliver,* 572 S.W.2d 440 (Mo. banc 1978).

The defendant recognizes the limited scope of appellate review but argues the circumstances of this case fall within the limited instances where Missouri courts have held the refusal to grant a continuance constitutes an abuse of discretion. In *State v. Jackson,* 344 Mo. 1055, 130 S.W.2d 595 (1939), the defendant faced a capital murder charge and within a week of arraignment went to trial after his attorney had withdrawn from the case and a new attorney had been appointed. In *State v. Kaufman,* 329 Mo. 813, 819, 46 S.W.2d 843 (1932), again a capital murder case, less than ten days elapsed between arraignment and trial, and defendant's counsel had no opportunity to prepare his insanity defense, especially where the doctor's examination took place only after a court order and during the noon recess of the first day of trial.

■ The particularly oppressive circumstances prejudicing the right to a fair trial and thus giving rise to reversal in these cases did not occur here. Sloan's counsel had two months in which to prepare a defense for the offense of theft, and Sloan never argues his counsel was unprepared. Sloan's defense consisted of his claim that Tom Umphreys, not he, stole the combine. Sloan argues his inability to consult with counsel just before trial deprived him of the necessary preparation for extensive cross-examination, and that the credibility of he and Umphreys constituted the principle issue at trial. While certainly the more humane gesture would have been to grant a continuance under the unfortunate circumstances, especially considering no actual delay appears to have occurred in the trial, this appellate court does not stand in the position of gauging defendant's in-court demeanor or emotional preparedness at trial which might have influenced his credibility before the jury. Even in *Mayfield v. State,* 153 Tex.Cr.R. 526, 221 S.W.2d 281 (1949), cited by Sloan, on a motion for rehearing the court was careful to note its reversal was *not* predicated upon the refusal to grant a continuance but upon unrelated grounds where the defendant's father died suddenly of heart trouble during trial and his mother had to be hospitalized, both of whom were to testify on his behalf. In *State v. Karno,* 342 So.2d 219 (La.1977), the court recognized that the physical or mental condition of a defendant could render consultation with counsel such that the refusal to delay a trial would have the effect of the denial of effective assistance of counsel. The Louisiana Supreme Court, however, defined as the considerations which should guide the court's exercise of discretion a number of objective variables relating to the defendant's condition to stand trial, none of which were provided to the trial judge in this case. The better practice would have been to grant the continuance, but due to the limited scope of appellate review, the denial cannot be declared prejudicial.

Point II claims error in the trial court's overruling defendant's motion to quash the jury panel based upon the sheriff and deputy telephoning persons known to them to serve as talesman jurors. Furthermore, contrary to the weight of Missouri case law, Sloan claims this error is reversible without further proof of prejudice.[2]

■ The Missouri talesman statute, Section 494.250, which provides that after exhaustion of the regular panel of jurors, upon court order, the sheriff may summon additional petit jurors from among the bystanders, has been held constitutional upon its face. *State v. Anderson,* 620 S.W.2d 378 (Mo.1981); *State v. Lindsey,* 630 S.W.2d 191 (Mo.App.1982); *State v. Johnson,* 606 S.W.2d 655 (Mo.1980). The constitutional defect which may occur in a particular case, however, lies in "the selection of bystander jurors by an interested official

2. *See State v. Holt,* 592 S.W.2d 759 (Mo. banc 1980); *State v. Bostic,* 625 S.W.2d 128 (Mo. 1981); *State v. Johnson,* 606 S.W.2d 655 (Mo. 1980); *State v. Alexander,* 620 S.W.2d 380 (Mo. banc 1981). *Contra: Henson v. Wyrick,* 634

F.2d 1080 (8th Cir.1980), *cert. denied* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1982); *Anderson v. Frey,* 715 F.2d 1304 (8th Cir.1983), *petition for cert. filed,* No. 83–725 (November 14, 1982).

or his or her subordinates or professional associates. It is the participation of an interested official in the jury selection process that is fundmentally unfair." *Anderson v. Frey,* 715 F.2d 1304 (8th Cir.1983), *petition for cert. denied,* —— U.S. ——, 104 S.Ct. 739, 74 L.Ed.2d 198 (1983). This "interest" rendering it fundamentally unfair for the sheriff to participate in juror selection derives from his institutional role and professional involvement in the prosecution of the defendant rather than from any personal motives. *See Anderson v. Frey, supra,* (sheriff's subordinates investigated case and selected jurors under general guidelines of sheriff, which included the selection of "upstanding citizens"); *Henson v. Wyrick,* 634 F.2d 1080 (8th Cir. 1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1982) (sheriff selected bystander jurors among his acquaintances and his deputies investigated case and testified at trial); *Thompson v. White,* 661 F.2d 103 (8th Cir.1981), *vacated and remanded,* 456 U.S. 941, 102 S.Ct. 2003, 72 L.Ed.2d 463, *on remand,* 680 F.2d 1173 (1982) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983) (sheriff personally selected entire jury panel and knew defendant was charged with shooting of a local law enforcement officer).

■ In *State v. Holt,* 592 S.W.2d 759 (Mo. banc 1980), the defendant was arrested in Pemiscot County where the murder occurred and was tried in New Madrid County. Because the sheriff and his subordinates had not participated in the arrest or investigation "there was no question of the sheriff acting out of loyalty to deputies or on the basis of special knowledge of the facts of the case." 592 S.W.2d at 768. The Eighth Circuit agreed with this conclusion when the defendant subsequently sought habeas corpus relief. *Holt v. Wyrick,* 649 F.2d 543 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982). The facts of this case fall within the holding of *State v. Holt.* Here the defendant was tried on a change of venue in Carroll County while those participating in the investigation of the stolen combine, a number of whom were

state's witnesses, were from Ray and Caldwell Counties. Thus the sheriff and his deputy who selected the talesman jurors had no professional involvement in the prior investigation or arrest of defendant. *See State v. Alexander,* 620 S.W.2d 380, 385 (Mo. banc 1981); *State v. Reed,* 640 S.W.2d 188, 195 (Mo.App.1982). The sheriff's and deputy's mere acquaintance with the jurors selected does not render them ineligible to participate in the selection process. *Anderson v. Frey, supra; Henson v. Wyrick,* 634 F.2d at 1084. Point II is ruled against defendant.

■ Point III also relates to the trial court's overruling of a motion to quash the jury panel. Sheriff Johnson stated under oath that he talked with the prosecutor, after the jury panel was excused but before peremptory strikes had been decided, concerning the residences and occupations of some of the panel members. None of the prospective jurors were individually questioned about their occupations or homes during voir dire. The Defendant claims error in that the "prosecutor was ... given an unfair advantage over the defendant by reason of the possession of knowledge which was ... potentially extremely useful to both sides in making peremptory challenges which should have been obtained if at all by questioning in open court during voir dire, so that it would have been equally available to defendant." In support of his argument he cites to authority holding that the preclusion of counsel from asking questions revealing a disqualifying attitude or interest of a potential juror is reversible error. *State v. Thompson,* 541 S.W.2d 16 (Mo.App.1976); *State v. Granberry,* 484 S.W.2d 295 (Mo. banc 1972). Here, no unfair advantage was created since the information disclosed was equally available to the defendant, who was not precluded from questioning the potential jurors during voir dire. Furthermore, a juror's job or residence is hardly of a nature that a potential juror would have concealed such information had he or she been asked about it. The point is denied.

Finally, the defendant complains of error in submitting Instruction Number 5, based

upon the MAI–CR 24.01 then in effect, which defined the range of punishment as:

1. Imprisonment in the Division of Corrections for a term of years fixed by you, but not less than two years but not to exceed seven years, or

2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year.

Four months after Sloan's trial our supreme court decided *State v. Quisenberry,* 639 S.W.2d 579 (Mo. banc 1982) which held that the minimum range of punishment for a Class C felony under Section 558.011.1(3) is one year rather than two. In *Quisenberry,* the jury imposed concurrent sentences of one year imprisonment and the judge, contrary to the prohibition of Section 557.-036.3, imposed a longer sentence of two years, erroneously believing the jury's sentence was less than the minimum for a Class C felony. *See* Section 557.036.3(1). On December 15, 1982, the supreme court approved a revision of the MAI instructions reflecting the *Quisenberry* decision for all Class C felonies, with an effective date of June 1, 1983.

Here the jury returned a sentence of one year imprisonment. The trial judge waived pre-sentence investigation, and imposed sentence in accordance with the jury's verdict as one year in the county jail. The defendant argues in his brief the court was unaware of the discretion vested in it to consider a sentence of one year in the Division of Corrections, which would require consideration of parole after eight months. *See* Section 549.261, RSMo. 1978.[3] According to defendant, the prejudice results from the absence of any consideration of parole in the county jail.

While *Quisenberry,* decided four months after trial, might provide validity to defend-

ant's argument contained in his brief, counsel for defendant at trial advanced no argument concerning the construction of Section 558.011.1(3). The trial judge merely followed the applicable MAI and counsel never proposed to the trial judge that the MAI was contrary to 558.011.1(3).[4] *See* Rule 28.03. Furthermore, when the supreme court did approve a revision applicable to all Class C felonies of the MAI, it made clear the revision would be prospective only. No error resulted, therefore, from the trial judge's failure to consider the one year sentence in the Division of Corrections prior to the *Quisenberry* decision and in the absence of any argument advanced by counsel that the applicable MAI was contrary to Section 558.011.1(3).

The conviction is affirmed.

---

3. Prior to the repeal of Section 546.490 on January 1, 1979 a sentence less than two years could not be served in the Division of Corrections, but this no longer holds true. *State v. Quisenberry,* 639 S.W.2d 579 (Mo. banc 1982).

4. Trial counsel only argued that it was not within the jury's province to consider a sentence of one year in the county jail. He argued had the

jury been faced with sentencing defendant with two years or none, it may have chosen to acquit, and that a jail term in the county jail results in more time being served than in the Division of Corrections. Thus counsel's argument was premised upon a construction of 558.011.1(3) that allowed consideration of two to seven years in the Division of Corrections for a Class C felony.